## FRANK ZNAMANACEK v. FRANK JELINEK.

### FILED MAY 20, 1903. No. 12,855.

1. **Vendor and Vendee:** SERVITUDES. Where the owner of two adjoining tracts of land sells one of them, the purchaser takes the tract sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the tract which the vendor retains.

2. ———: ———. Where the owner of two adjoining tracts of land constructs a dam of a permanent character across a stream on one tract, which causes the water to overflow a portion of the other tract; upon a sale of such other tract to one having knowledge of the existence of such dam and its character, in the absence of evidence of a contrary intent, there arises an implied contract that the mutual benefits and servitudes, as regards such dam, shall remain *in statu quo*.

3. **Evidence.** Evidence examined, and *held*, not sufficient to show an intention to the contrary.

ERROR to the district court for Saline county: GEORGE W. STUBBS, DISTRICT JUDGE. *Affirmed.*

*Fayette I. Foss, B. V. Kohout* and *J. A. Wild,* for plaintiff in error.

*A. R. Scott* and *George H. Hastings, contra.*

ALBERT, C.

This is an action for damages, alleged to have been sustained by the plaintiff on account of a dam constructed by the defendant across a stream of water, whereby the water was thrown back on the lands of the plaintiff. A trial to the court, without a jury, resulted in a general finding for the defendant and judgment was given accordingly. The plaintiff brings error.

It is conclusively established that in 1882, the defendant was the owner of two quarter sections of land, adjoining each other, one of which we shall call the east, the other, the west quarter. A small stream of water flowed from the west quarter through the east quarter. In that year the defendant constructed a dam across the stream on the east quarter, which threw the water back upon a portion of the west quarter, and, with the exception of a short time when it was destroyed by flood, has ever since maintained the dam at that place. In 1891, he conveyed the west quarter to the plaintiff by warranty deed. At the time of the conveyance, the dam was in existence and its existence and condition were known to the plaintiff. The evidence is sufficient to warrant a finding that the dam was a permanent structure; that the parties so regarded it at the time of the conveyance is clearly shown by the fact that its existence and probable effect on the land was discussed to some extent by them at that time. Whether the dam, since it was first constructed, had always been maintained at the same height that it was at the time the alleged damages were sustained, was one of the issues submitted to the trial court upon conflicting evidence. The trial court by its general finding resolved that question in favor of the defendant. The findings in that regard are amply sustained by the evidence; so it stands as one of the established facts in the case that the dam at no time has been maintained at a greater height than when first constructed, when the conveyance, hereinbefore mentioned, was made to the plaintiff.

The foregoing facts, we think, bring the case within the rule announced in *Lampman v. Milks,* 21 N. Y. 505, and approved by this court in *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263, which is as follows:

"Where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains."

The plaintiff contends that the defendant could have no easement in the west quarter while both quarters belonged to him, because one can not have an easement in his own land; that he did not acquire an easement by prescription after he had parted with the land, because this action was brought within less than ten years from the date of the conveyance of the west quarter to the plaintiff, and that there is no evidence of any express or implied grant, consequently, the easement is not established.

It has been held by this court, that a parol grant of an easement will be upheld, where there has been a valid consideration and the grant is certain in its terms, and there has been such a performance on the part of the grantee as would, in the case of a contract for the sale of the fee, take the case out of the statute of frauds. *Gilmore v. Armstrong,* 48 Neb. 92. While that was what is technically called a suit in equity, yet as equity and law are administered by the same courts in this state, there is no reason why the defendant, in an action of this character, may not interpose as an equitable defense a parol grant of an easement. A parol grant of an easement, like any other contract, may rest in implication, as in *Lampman v. Milks, supra,* where the owner of land, across which a stream flowed, diverted the stream so as to relieve a portion of the land which had formerly been overflowed, and it was held, that the parties, under such circumstances, are presumed to contract with reference to the condition of the property at the time of the conveyance. In other words, under

such circumstances, the law implies a contract, mutually binding on the parties, that the mutual privileges and servitudes of the two tenements, as then obviously existing, shall remain *in statu quo.* Such agreement can not be said to be without consideration, because it is a part of the principal contract, evidenced by the conveyance, and is relieved of all uncertainty by the obvious character of the easement.

But the plaintiff contends that the presumption, arising in favor of the existence of the easement, is rebutted by the testimony in this case. The testimony of plaintiff on this point is as follows:

Q. When you bought this land in 1891, you went down to see the dam, did you not?

A. No, I did not. We talked about the dam.

Q. What did you talk about the dam?

A. I talked about the dam. Jelinek tried to sell me the land. I did not talk much with him about it, only he told me there was a dam there.

Q. Don't you recall the fact that Jelinek said that he wanted to take out the pond?

A. I spoke about the water on the land. I said I did not like the water stand on the land. He said he would like to buy it. I tell him if he buy it of me he could keep it.

Q. That was at the time he made the deed?

A. Yes, sir, but before, when I was ready to buy it. * * *

Q. Don't you remember of saying to Jelinek when this deed was made when he said I will measure out the overflow, will not make you a deed for that, and will take that out of the purchase price, and you said I don't want it that way; it would be like a coat that you might have made with a piece cut out of the back?

A. Yes, sir.

Defendant testified:

Q. Was this dam talked over between you and Znamanacek at or before you sold him the land?

A. Yes, sir.

Q. What was said?

A. Well he say he would buy that piece of land; he see that water there; he say he wants that water there, that is the way he put it. I say I measure it to see how much it flood over, as I did not want him to pay me for it, he say if he buy that piece of land with that piece out it would be like buying a coat with a piece cut out of the back of it.

Q. When you had this talk with Znamanacek about buying back a portion of that property he said he did not want to cut any of it out?

A. No, he did not want to cut out any.

Q. When you sold it to him he paid you for the whole of it, did he not?

A. I told him I did not damage the land any. He said he want that whole piece of land.

Q. He wanted the whole of it?

A. Yes, sir, and he wanted that water too.

The testimony of the defendant is corroborated by that of his wife. This evidence, instead of rebutting the presumption, seems to us to strengthen it. The testimony of the plaintiff is not quite clear, but that of the defendant, corroborated by that of his wife, shows clearly that the parties, at the time of the conveyance, understood that the dam was a permanent structure, and that it would be maintained in the future. We think the case falls squarely within the rule announced in the case hereinbefore cited. It follows, therefore, that the judgment of the district court is right, and we recommend that it be affirmed.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.