SARAH F. GOOZEE, APPELLEE, v. HATTIE GRANT ET AL., APPELLANTS.

FILED MAY 7, 1908. No. 15,164.

1. Adverse Possession: TACKING. Where the owner of two contiguous lots of lands conveys one of such lots to A, and subsequently conveys the other lot to B, and a controversy arises between A and B concerning the boundary line between the two lots, A cannot, for the purpose of establishing title by adverse possession against B, tack his own possession to that of the common grantor.

2. Boundaries: ESTOPPEL. The owner of four lots built a fence around what he supposed were lots 1 and 2, and erected a dwelling house in about the center of said lots, in which he lived for about 20 years. He then sold and conveyed lots 1 and 2 to the defendant, and afterwards sold and conveyed lots 3 and 4 to the plaintiff. The evidence disclosed that the fence built by the former owner included a part of lot 3. Held, That plaintiff was not estopped to claim so much of lot 3 as was inclosed by the fence, no representation having been made to the defendant when she made her purchase that the fence did not include land other than lots 1 and 2.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*John Grant* and *Hoagland & Hoagland,* for appellants.

*Wilcox & Halligan, contra.*

DUFFIE, C.

From a stipulation entered into between the parties, it appears that lots 1, 2, 3 and 4 constitute the north half of block 98, in the city of North Platte. March 30, 1885, H. Otten became the owner of these lots by conveyance from Thomas Hughes. March 19, 1897, Otten conveyed lots 1 and 2 to Hattie Johnson, who has since intermarried with John Grant, and who, with her husband, are the defendants herein. May 4, 1898, Otten conveyed lots 3 and 4 to Milton Doolittle, receiver of the North Platte National Bank, and Doolittle as receiver of the bank afterwards conveyed said lots 3 and 4 to the plaintiff, Sarah Goozee. Shortly after the purchase of these lots Otten built a fence near the line between lots 2 and 3, and near the southwest corner of lot 2 he erected a barn, the west side of which is on a line with the fence. The fence and barn have stood where built up to the time of the trial. When Otten conveyed lots 1 and 2 to Hattie Johnson (now Hattie Grant), she went into possession of the property up to the fence and the west line of the barn, and has ever since been in continuous possession. Goozee went into possession of lots 3 and 4 on receiving her deed, and has been in possession up to the fence and to the west side of the barn on lot 2 up to the time of the trial. Otten took possession of the four lots constituting the north half of block 98 March 30, 1885, and maintained possession of the whole of the north half of said block up to the time when he conveyed lots 1 and 2 to Hattie Johnson in March, 1897. It is further stipulated that, soon after taking possession of the lots, Otten erected a dwelling house near the center of lots 1 and 2, and

occupied it as his home up to the time that he sold to Hattie Johnson, and that the strip in dispute between the parties lies immediately east of the line of fence and the west side of the barn heretofore mentioned. The land in dispute is a strip along the west side of lot 2, 2.47 feet on the north line, and 2.62 feet on the south line of said lot, it being 132 feet in length. The case was ejectment brought by the plaintiff to recover possession of the strip in dispute between the parties, and the trial was to the court without a jury. Judgment went in favor of the plaintiff, and defendant has appealed.

The evidence discloses that Otten, before building the fence above referred to, measured the width of lots 1 and 2, and erected the fence upon what he supposed was the true boundary line between lots 2 and 3. He located the west side of his barn on a line with the fence, and, as he supposed, on the southwest corner of lot 2. He also planted a row of trees east of the fence and near thereto. It is undoubtedly true that defendant, when she purchased lots 1 and 2, believed that these lots included all the land east of the fence, and that the barn stood wholly upon lot 2. A recent survey made before the trial discloses that the fence and barn include a strip off from the east side of lot 3 of the width above mentioned, and that Otten and Mrs. Grant were mistaken as to the true boundary line between lots 2 and 3. The claim made by the defendant that the rule relating to adverse possession should be applied to this case cannot be sustained. While Otten had inclosed a part of lot 3, and occupied it as his home for 20 years or more prior to the trial, he was also in possession of lots 3 and 4 during all that time, and could not, of course, hold adversely to himself. *Sluyter v. Schwab,* 73 Neb. 370. Neither can the claim of estoppel made on behalf of Mrs. Grant be sustained. While she and her grantor, Otten, may have believed that the fence and barn marked the true boundary line of the lots which she was purchasing, no express representation to the effect was made to her,

and her rights rest wholly upon the description contained in her deed which conveys lots 1 and 2 only.

The case is one of mistake as to the location of the true boundary line, and, the true boundary line being ascertained, the rights of the parties are fixed thereby. We recommend an affirmance of the judgment appealed from.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.