ELLSWORTH  E.  ARTERBURN,  APPELLANT,  V.  BENJAMIN
BEARD ET AL., APPELLEES.

FILED MAY 5, 1910.  No. 15,944.

1. Vendor and Purchaser: EASEMENTS.  One who purchases land
   burdened with an open and visible easement is ordinarily charged
   with notice that he is purchasing a servient estate.

2. Licenses: IRRIGATION.  A parol license to enter land and construct
   a dam and ditches to be used for irrigation purposes, after it has
   been acted upon by the expenditure of money and labor and used
   for years without objection, is irrevocable.

3. Mortgages: SUBSEQUENT EASEMENT: FORECLOSURE SALE: TITLE OF
   PURCHASER.  Where a mortgage on lands has been executed prior
   to the grant of an easement by the mortgagor without the mort-
   gagee's knowledge and consent, the easement is junior and in-
   ferior to the mortgage lien, and when the mortgage is foreclosed
   and the grantees of the easement are properly brought into the
   suit, a purchaser at the foreclosure sale becomes vested with the
   complete title to the land as it stood when the mortgage was
   executed.

4. ———: FORECLOSURE SALE: TITLE OF PURCHASER.  "A foreclosure
   sale of lands and tenements, unless the decree otherwise pro-
   vides, transfers to the purchaser every right and interest in the
   property of all the parties to the action."  *Hart v. Beardsley*,
   67 Neb. 145.

5. Vendor and Purchaser: EASEMENTS: SUBSEQUENT PURCHASER:
   DAMAGES.  Where parties, who have been divested by foreclosure
   proceedings of their title to certain easements of flowage and the
   right to maintain a dam and ditches for irrigation purposes,
   continue to maintain and operate them for more than two years
   thereafter, claiming title thereto, a subsequent purchaser with
   notice of the burden takes the land charged with the easement,
   and the right to damages does not pass to such subsequent pur-
   chaser.

APPEAL from the district court for Chase county: ROB-
ERT C. ORR, JUDGE. *Affirmed.*

*Morlan, Ritchie & Wolff,* for appellant.

*C. W. Meeker* and *P. W. Scott, contra.*

LETTON, J.

The plaintiff is the owner of a ranch in Chase county consisting of over 2,000 acres of land, the title to the several tracts of which it is composed he acquired in 1902, 1903 and 1904. The Frenchman river runs through a portion of the land. At the time the plaintiff became the owner of the premises a dam was in existence across the river at a point near the S. E. corner of the S. E. ¼ of section 11, township 6, range 41, which created a pond extending over a portion of that quarter section and over a portion of the S. W. ¼ of section 12, covering in all about 40 acres. From this pond two irrigation ditches ran, one on the north side and the other on the south side of the river; the south ditch running through a portion of sections 13 and 14.

This action was brought against the defendants, who claim to be the owners of certain water rights and to be entitled to maintain and operate the dam and irrigation ditches over the plaintiff's lands. The petition is long and involved, but, in substance, it alleges that the defendants maintain and operate the ditches and dam without legal right or authority; that they have cut the fences of plaintiff's hog pasture, and have fenced along each side of the south ditch, excluding the plaintiff from the river and depriving him of the use of its waters for watering his hogs; that they threaten to destroy the fences that plaintiff has built or may hereafter build across said ditch, and that they refuse to build any bridges or crossings, and threaten to make it impossible for him to pass from one part of his ranch to the other. It denies that they ever instituted condemnation proceedings for the purpose of appropriating the water, or the land for ditches and reservoir, and alleges that defendants threaten by force to maintain the dam and ditches. The prayer is for an injunction to restrain the threatened trespasses, for an accounting of the damages already sustained, and that defendants be adjudged to have no right or interest in or to the plaintiff's lands.

The answer pleads ownership of the ditches and dam; that defendants had permission and authority to construct, maintain, and operate the dam and ditches; that they were constructed in 1894, and that defendants have ever since been in the open, adverse, and continuous possession of the same and the lands necessarily used in the operation of the same, and that the right of action, if any, is now barred by the statute of limitations.

The reply alleges that the lands on which the dam and ditches were built were mortgaged at the time of their erection, and that the mortgages were foreclosed, and all right and title of defendants were barred and foreclosed.

The evidence shows that in December, 1894, and early in 1895, when the defendants erected the dam and excavated the ditches, they received permission to do so either by parol or in writing from the several owners of the lands over which the dam and ditches were constructed, or from persons purporting to be their agents, and that considerations of divers kinds were given for these rights. After obtaining license or permission to enter, the defendants incurred much expense and performed a great deal of labor in the erection of the dam and the excavation of the ditches; the dam constructed being about 300 or 400 feet long, 15 or 20 feet wide at the top, and 20 feet high at the highest point, and the ditches several miles in length. When the plaintiff purchased the lands, they were in full possession of the irrigation system, maintaining the same and operating it during the crop season. The plaintiff was familiar with the locality and knew of the existence and use of this irrigation system at the time he bought the land. He was, therefore, charged with notice of the easement claimed by the defendants. The estate that he purchased was servient to this easement, and he bought subject thereto. *McLure v. Koen,* 25 Colo. 284; *Snowden v. Wilas,* 19 Ind. 10, 81 Am. Dec. 370; *Cook v. Chicago, B. & Q. R. Co.,* 40 Ia. 451; *Franklin v. Pollard Mill Co.,* 88 Ala. 318; *Hodgson v. Jeffries,* 52 Ind. 334;

*Stephens v. Benson,* 19 Ind. 367; *Znamanacek v. Jelinck,* 69 Neb. 110.

The contention of plaintiff, that the defendants have no valid title either by grant or condemnation proceedings, we think cannot be sustained. As to the tracts over which they were given a parol license by the owners to construct their system, when they expended their time and money in the construction of the dam, ditches, flumes, etc., the contract was complete when the work had been performed, and as long as kept up the license was irrevocable. *Gilmore v. Armstrong,* 48 Neb. 92; *Johnson v. Sherman County I., W. P & I. Co.,* 71 Neb. 452. While as to the lands over which there is no proof that the actual owner gave permission, and as to which it is shown the defendants took actual possession under a claim of right and over which they have operated for twenty years, the statute of limitations fully protects them against the plaintiff's claim. For these reasons, the plaintiff, when he bought the land, took it charged with the easements then held by the defendants, and their title as against him on that account is perfect.

The foregoing considerations apply as to defendants' rights over all of the land except two tracts. One of these, the S. E. ¼ of section 11, upon which the larger part of the dam and most of the pond is situated, was owned in 1888 by one William C. Gilham. On December 15 of that year he executed a mortgage to the Sullivan Savings Institution to secure a loan. The other tract, described as the W. ½ of the N. W. ¼ of section 11, which is traversed by one of the ditches, was in 1888 owned by Jasper W. Toothacre. On April 24, 1888, Toothacre executed a mortgage to Carlos C. Burr to secure the payment of a note. These mortgages were soon afterwards filed for record. On the 8th of December, 1894, the defendants Benjamin Beard and Eli Maranville, together with one Martin Overtree, posted notice of appropriation of the waters of the Frenchman river under the act approved March 24, 1889, at the place of diversion on the Gilham tract, and this

notice was on the 15th of December, 1894, duly filed with the county clerk of Chase county. The interest of Martin Overtree was afterwards purchased by the defendant Logan Maranville. The right to occupy the land with the dam and pond was purchased from one Young, who was then the owner of the equity in the land, but, so far as the record shows, nothing was paid to the mortgagee. Work was begun by the defendants in December, 1894, the dam and ditches were completed in the spring of 1895, and the system has been in constant use ever since. Default being made, separate actions were brought to foreclose these mortgages. In the Toothacre case it was specifically alleged that the defendants, naming them, claimed a strip under a right of way deed. In the Gilham case general allegations were made as to their claim. Personal service was had upon the defendants in each case and a decree of foreclosure rendered. The Toothacre land was sold under the decree and the sale confirmed. In this case also personal service was had, default taken, and a decree of foreclosure rendered. The property was sold and the sale confirmed.

Plaintiff derives his title to these two tracts through the purchasers at the foreclosure sale. He now insists that by virtue of these proceedings all right, title, and interest of defendants to the tracts went to the purchaser at the foreclosure sale, and passed to him by mesne conveyances, and that he is, therefore, entitled to an injunction to restrain their entering thereupon and maintaining and operating the dam and ditch. This contention raises an interesting question. When in 1894 and 1895 defendants procured the right of way over these tracts, they had constructive notice of the existence of the mortgages and that whatever right they acquired in the premises was subject to the liens created thereby. It is clear that by the foreclosure proceedings all the rights which they had acquired from the mortgagors pass (under the code, sec. 853) to the purchaser at the foreclosure sale. *Young v.*

50

*Brand,* 15 Neb. 601; *Dodge v. Omaha & S. W. R. Co.,* 20 Neb. 276; *Hart v. Beardsley,* 67 Neb. 145; *Watson v. Grand Rapids & I. R. Co.,* 91 Mich. 198. It is equally clear that the appropriation of the waters of the Frenchman river which they had made under the irrigation statute was in nowise affected by the foreclosure proceedings. It gave them an independent right to the use of the water, derived from the state, and not from an individual.

The sheriff's deed to the purchaser of the Gilham tract was executed on the 2d day of January, 1900, and to the Toothacre tract the deed was executed December 28, 1899. The purchaser of the former tract retained the title until September 26, 1902, and of the latter until October 14, 1902. The evidence shows that, after these purchasers became vested with the title to the property, the defendants continued to operate the dam and ditches in like manner as before. Whatever right they owned had been divested, and whatever use and appropriation they made of these lands would have entitled the owners at that time to compensation, to damages ascertained by condemnation proceedings, or to an action for damages for the continuing trespass. The defendants were in full possession of the easement, had appropriated it to a *quasi*-public use, and had been in the undisturbed possession of it for over two years and a half when the plaintiff purchased an interest in the premises. This being so, he took the property with notice of the easement, and did not purchase the right of action, which belonged to the former owner, and which did not pass by the deed. The case is the same as where a railroad has, without consent or authority of the owner, appropriated land and built its road, and the owner sells the land. In such case the purchaser takes the land subject to the easement, and the former owner does not part with his right of action for the unlawful taking. These principles are well established. *Chicago, B. & Q. R. Co. v. Englehart,* 57 Neb. 444; *Stratton v. Omaha & R. V. R. Co.,* 37 Neb. 477; *Buckwalter v. Atchison, T. & S. F. R. Co.,* 64 Kan. 403, 67 Pac. 831; *Kakeldy v. Columbia & P. S. R. Co.,*

37 Wash. 675, 80 Pac. 205. In *Roberts v. Northern P. R. Co.*, 158 U. S. 1, it is said: "It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

In addition to these considerations, from the time the plaintiff bought the lands until shortly before the beginning of the suit be recognized the right of the defendants to the maintenance of the dam and the use of the ditches, stood by and saw them working on the ditches and dam without objection.

As to plaintiff's complaint of the cutting of his fences, and depriving him of the right to water his stock, the evidence does not bear out the sweeping allegations in his petition. The principal trouble seems to have grown from the fact that he extended the fences of his hog pasture across the ditch so as to make it impossible for the defendants to enter the same for the purpose of cleaning it or keeping it free from obstructions without removing these fences at the point of crossing. The defendants at their own cost built fences on each side of the ditch through the hog lot, and made a bridge or crossing so that his hogs might reach the water of the river from all points of the pasture. This they had a right to do. There can be no doubt that the existence of these ditches upon the plaintiff's land interferes with the convenient operation of his ranch and inconveniences him in the passage of his teams and live stock from one portion of the land to the other, but these inconveniences were all patent and visible at the time he bought, and he cannot now be relieved from the annoyance caused thereby.

We think the evidence does not bear out the allegations

of the petition as to interference with plaintiff's riparian rights in the river. A number of errors are assigned, but, in the view we take of the legal principles applicable to the undisputed evidence, their consideration is unnecessary.

The judgment of the district court is

AFFIRMED.