FRANK DE CONLY, APPELLEE, v. WINTER CREEK CANAL
COMPANY, APPELLANT.

FILED APRIL 10, 1923. No. 22190.

1. **Easements:** NOTICE. One who purchases land burdened with an open and visible easement is charged with notice of the same, and the estate he purchases is servient to the easement.

2. **Waters:** EASEMENT: INJUNCTION. Where an irrigation canal company, with the consent of a drainage district and the owner of a tract of adjacent land affected by flowage, constructed works whereby it was enabled to use water discharged from the drainage ditch into its canal for irrigation purposes, which use had continued for several years, a subsequent purchaser of the land affected may not restrain this use of the water upon the ground that the canal company had not acquired the right to appropriate the water.

APPEAL from the district court for Scotts Bluff county: RALPH W. HOBART, JUDGE. *Reversed.*

*F. A. Wright* and *Mothersead & York,* for appellant.

*Morrow & Morrow,* contra.

Heard before MORRISSEY, C. J., DEAN, LETTON and ALDRICH, JJ., TROUP, District Judge.

LETTON, J.

One De Conly brought this action to enjoin the Winter Creek Canal Company, hereinafter termed the defendant, from obstructing the flow of water in a drainage ditch belonging to Drainage District No. 1 of Scotts Bluff county, alleging that this caused his land to be damaged by seepage water and floods. De Conly afterwards died and the suit was revived in the name of his executor. A permanent injunction was allowed. Defendant appeals.

The De Conly tract of about 120 acres of land lies in the valley of the North Platte river with higher lands to the north and west. A drainage ditch flows south along the boundary of the land to a point where it intersects the north bank of the irrigation canal of the defendant. Previous to the formation of the drainage district and the excavation of one ditch nearly all of this

land was wet and swampy. This condition was caused by the seepage of water from higher lands which were under irrigation from other canals at a higher level. It was almost totally unfit for cultivation on account of this condition. Under the articles of incorporation the south boundary of the drainage district is the north bank of the canal of the Winter Creek Canal Company.

When the ditch was excavated, a concrete structure was erected at its point of discharge into the canal. This structure had several gates. One of these sluice gates, when opened, permitted the waters from the drainage ditch to flow through a sluice under the irrigation canal, discharging on the other side of the canal. Except when the gate was opened, the water in the ditch flowed through another channel in the structure, into the canal of defendant, and the waters were used for irrigation purposes.

The facts are undisputed that Harrison, the then owner of the land, took an active part in the organization of the drainage district soon after the year 1911. He was one of its directors, and was fully informed of the nature and purpose of the concrete structure erected by the canal company at the point of discharge of the waters of the ditch into the canal of defendant. He made no objection to the manner in which the outlet was constructed. The ditch was of immediate benefit to his land, reclaiming the greater part of it and rendering it susceptible to cultivation. He continued to farm the land for several years after the works were finished before he sold it to Mr. De Conly. These works were in full view of any ordinary observer. De Conly was familiar with the locality and purchased the land in 1917 with full knowledge of the existence of the easement created by the ditch. De Conly testified that the sluice underneath the irrigation canal is kept open six or seven months every year, but it is closed during the remainder of the year; that, on account of the water table in the soil being raised by the closing of the gate

and the retention and consequent elevation of the level of water in the drainage ditch, his land has become permeated with seepage water, and a large acreage of alfalfa killed.

The fact that the water level in the ditch was raised when the sluice gate was closed, and that the water was discharged into the irrigation canal by means of the concrete structure, was open and obvious. Both the irrigation canal and the drainage ditch are works of public utility. The law does not permit one who purchases land with notice that it is burdened with a public easement, to destroy the purpose which the easement subserves by means of a writ of injunction. He takes the property subject to the easement, and has no greater rights than his grantor. This is not a new question in this state. *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263; *Znamanacek v. Jelinek,* 69 Neb. 110; *Arterburn v. Beard,* 86 Neb. 733; *Seng v. Payne,* 87 Neb. 812; *Moll v. Hagerbaumer,* 98 Neb. 555; 19 C. J. 939, sec. 145.

In *Arterburn v. Beard, supra,* the evidence showed that the plaintiff, who sought an injunction, was familiar with the locality and knew of the existence and use of the ditch or canal at the time he bought the land. The court held that he was charged with notice of the easement, and the estate that he purchased was servient to the same.

This principle applies here, and plaintiff is not entitled to injunctive relief. The question whether the defendant has acquired an appropriation to the water in the ditch is not one that can be raised by De Conly, since he is not charged with the protection of public right, if any, to the use of the water.

A number of other points are raised, but under the view we take it is unnecessary to consider them. What has been said is without prejudice to a right of action, if any plaintiff has (as to which we express no opinion), for damages caused by the flooding of his crops and resulting from the negligent operation of the ditch and

sluiceway. He may therefore be permitted to amend his pleading in this suit to permit such an issue to be raised, if the facts justify it.

REVERSED AND REMANDED.