EVERETTE L. CHRISTENSEN ET AL., APPELLANTS, V. ADOLPHINE LUEHRS ET AL., APPELLEES.
273 N. W. 839

FILED JUNE 22, 1937.   No. 29999.

*Fred H. Richards, Jr.,* for appellants.

*Courtright, Sidner, Lee & Gunderson, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

GOOD, J.

Plaintiffs brought this action in equity to quiet title to an alleged easement in a joint driveway located partly on the realty of defendants, and in part on realty of plaintiffs; to require defendants to remove from such driveway obstructions placed thereon, and to enjoin them from further obstructing the driveway or interfering with plaintiffs' use thereof. Defendants denied the existence of any easement or that there was a joint driveway. Trial to the court resulted in a decree for plaintiffs, but plaintiffs were not awarded all of the strip over which they claim an easement. Plaintiffs have appealed, and defendants have filed a cross-appeal.

Lot 6, in block 90, Barnard's Addition to the city of Fremont, is approximately 70 feet in width from north to

south and abuts on the east side of Clarkson street in the city of Fremont. In 1913 Charles E. West became the owner of lot 6. Some time thereafter he erected two houses on said lot of like dimensions. One of these houses was located four feet from the north line of lot 6, and the other four feet from the south line thereof. There was a space of approximately 14 feet in width between the two houses. Both houses were serviced by one grease trap, which was constructed on the 14-foot strip. The evidence tends to show that the 14-foot space, or a part thereof, was used for a driveway, for the delivery to the two properties of fuel and other articles. Clarkson street was paved after the construction of the houses, but there was no cut in the curb for an entrance to this driveway. West, who owned both properties, procured or constructed a movable bridge-like approach for the use of vehicles to pass over the curb into the 14-foot space between the buildings. Later, while Mr. West was still the owner of the properties, he caused an opening to be cut in the curb in front of the 14-foot space. There is evidence that he was asked why he did not cut the curb at the time it was put in, and that he answered he was not at home at the time or he would have had a cut left for the driveway.

In 1922 West sold the north half of lot 6 to one Lillie. Up to this time there had been no garage erected on either of the properties. In 1926 Mr. Lillie erected a garage in the rear of his residence and quite close to the south line of his half lot. Mr. West was present at the time and knew that the only way Mr. Lillie could gain access to his garage would be over the space between the two buildings. At this time one Patton was a tenant of West in the south property. There is evidence that she asked Mr. West to build a garage on the south property for her use, and requested that it be built on the north line of the south property, so that the Lillie garage and the garage she desired built could use one wall between them, which would be on the line between the two properties. Mr. West did not erect a garage on the south property. Later he de-

parted this life, and his executor sold and conveyed the south property to Mrs. Patton. The evidence tends to show that Mrs. Patton used this driveway in washing her automobile, and that the driveway was used in delivering fuel to her. Later, Mrs. Patton sold the south property to the defendants Luehrs, and Lillie sold the north property to the plaintiffs. The evidence tends to show that Mrs. Luehrs was aware that the 14-foot strip was used as a driveway. She knew this when she purchased the property. She knew the driveway had been used by the tenants and owners of the north property to gain access to the garage and for other purposes.

We think it fairly inferable from the evidence that when West constructed the two houses, leaving a 14-foot space between them, it was contemplated by him that the space should be used as a driveway for the convenience of both properties. This is made evident by the fact that the strip was so used as a driveway; that West, while he was still the owner of both properties, constructed a bridge-like approach over the curb for the use of vehicles, and that later on he caused a cut to be made in the curb in front of this space, showing unmistakably that he intended the 14-foot strip, or a part thereof, to be used as a driveway.

The record does not disclose that there was any formal dedication of a driveway over this 14-foot strip, or that there was any reservation made in any of the deeds or conveyances mentioned herein. However, we do not think that fact is controlling. The principle applicable to and which will control the decision in this case will be found in the following authorities.

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists, such easement being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. The use is continued in the grantee by oper-

ation of law, whether the creation of the quasi easement was by the act of the owner himself or by a tenant acting under his authority." 19 C. J. 914. And in the same volume, at page 915, it is said: "If the owner of an estate, part of which is quasi dominant and part quasi servient, aliens the two portions to different persons, the respective alienees will take the portions granted to them burdened or benefited, as the case may be, by those rights in the nature of apparent and continuous easements which the previous owner had the right to attach to them." Some authorities hold, however, that an easement will not pass by implication except in cases of strict necessity, while others hold that an easement by implied grant can only arise in case of necessity. The weight of authority and better view sustain the rule that the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made, and that it should not be absolutely necessary for the enjoyment of the estate granted. See 19 C. J. 919.

The applicable principle is stated in *Fremont, E. & M. V. R. Co. v. Gayton,* 67 Neb. 263, 93 N. W. 163, wherein it is held: "Where an owner of land by any artificial arrangements effects an advantage for one portion as against another, upon severance of the ownership the grantees of the two portions take them respectively charged with the easement and entitled to the benefit openly and visibly attaching at the time of the severance."

In *Znamanacek v. Jelinek,* 69 Neb. 110, 95 N. W. 28, this principle is announced:

"Where the owner of two adjoining tracts of land sells one of them, the purchaser takes the tract sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the tract which the vendor retains.

"Where the owner of two adjoining tracts of land constructs a dam of a permanent character across a stream on one tract, which causes the water to overflow a portion of

the other tract; upon a sale of such other tract to one having knowledge of the existence of such dam and its character, in the absence of evidence of a contrary intent, there arises an implied contract that the mutual benefits and servitudes, as regards such dam, shall remain *in statu quo.*"

Among the cases from other courts recognizing the principle here involved are *Cihak v. Klekr,* 117 Ill. 643, 7 N. E. 111; *Teachout v. Duffus,* 141 Ia. 466, 119 N. W. 983; *Oliver v. Wilhite,* 227 Mo. App. 538, 55 S. W. (2d) 491; *Forde v. Libby,* 22 Wyo. 464, 143 Pac. 1190; *Wright v. Barlow,* 169 Okla. 472, 37 Pac. (2d) 958. In the latter case it was held: "Where owners of adjoining lots orally agreed upon a private way between their lots and constructed their improvements with relation thereto, each was estopped from disputing the other's right to such way, and that estoppel extended to their grantees, who took with notice of the way, although it was not expressly reserved."

In the instant case, West constructed his properties with a view to the use of the intervening space between the buildings for a drive. It was so used. When he sold the north half to Lillie, Lillie had a right to and did assume an implied grant or dedication of the strip, or so much thereof as was reasonably necessary for a drive. With that end in view, he constructed his garage in the rear of his residence where it could be used only by his passing over the strip as a driveway. West acquiesced and consented therein. Lillie went to considerable expense in thus constructing his garage, which would be useless to him or his grantee except by the use of the strip as a drive. When the plaintiffs purchased from Lillie they knew that the strip was used as a drive and that the garage would be useless to them except by the use of the strip for a drive. Mrs. Patton, the grantee of the south property from the executor of West, likewise knew of the use and necessity for the strip as a drive when she purchased, and so did her grantees, the defendants in this action. We have no hesitation in holding that an easement exists over the strip in question by implied grant or dedication.

The remaining question is the extent and width of the easement. Naturally, it would be so much thereof as is reasonably necessary for a convenient and comfortable enjoyment of the plaintiffs' property. The trial court granted an easement to the extent of a strip one foot wide along the north side of defendants' lot. We think this is insufficient for plaintiffs' convenient and comfortable enjoyment of their property. While it might be possible, by the use of extraordinary care, for plaintiffs to get into and out of their garage, by permitting an easement of only a one-foot strip of defendants' land, it is insufficient for a fair, reasonable and convenient use. We think that not less than three feet should be allowed off the north side of defendants' lot.

The cross-appeal relates only to the question as to whether or not plaintiffs are entitled to an easement over any part of defendants' lot. Since this question has been determined, no further consideration need be given the cross-appeal.

The judgment of the district court is modified so as to permit the plaintiffs to use, as a part of the drive, a strip off the north side of defendants' land three feet in width, extending from the west line of the lot a distance of 65.8 feet. As thus modified, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.