Curtis O. Bennett et al., Appellants, v. Harold K. Evans et al., Appellees.

74 N. W. 2d 728

Filed February 10, 1956.   No. 33842.

*Perry, Perry & Nuernberger,* for appellants.

*Sterling F. Mutz,* for appellees.

Heard before Simmons, C. J., Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

This action originated as one in ejectment to secure the possession of the west 3 feet of Lot 9, Block 1, Linwood Manor in Lincoln, Nebraska. The defendants are the owners of Lot 10, Block 1, which is contiguous to Lot 9 and immediately west thereof.

The defendants by answer admitted plaintiffs' ownership of Lot 9 "except the portion thereof which is occupied by the garage and driveway of the defendants on the west side of the plaintiffs' property."

Defendants further alleged that the titles of the parties came from a common owner of both lots who built the garage and driveway where they are now located and thereby established the boundary line between the properties "at a point just east of the garage and driveway"; and that plaintiffs purchased with knowledge of the location of the boundary line and were estopped from claiming a right of possession of the property on which the garage and driveway are situated.

By cross-petition, defendants alleged a right to and prayed for a decree fixing and establishing the boundary line and that defendants be decreed to be the owners of all that portion of Lot 9 "on which the garage and driveway of the defendants extend over and upon the same" or that they be decreed to have a perpetual easement for its use and occupancy appurtenant to the land.

The reply consisted of a general denial and allegations of matters not necessary to a decision here.

The trial court found generally for the defendants. The trial court decreed that defendants had a perpetual easement on the west 3 feet of Lot 9 as a reserved easement and decreed that it be construed as a covenant running with the land.

Plaintiffs appeal.

We reverse the judgment of the trial court and remand the cause with directions to enter a judgment for the plaintiffs.

A jury was waived in the trial court. The action was tried and disposed of as one in equity without objection by the parties.

The material facts out of which this controversy arises are not in substantial dispute.

Evans & Moore, a partnership, owned, platted, and developed this addition. The defendant Evans was a member of the partnership. Moore died in September 1954.

Each of the lots involved here is rectangular in shape,

by plat 60 feet in width facing the street and 120 feet in depth.

Sometime during the month of July 1952, the partnership began the construction of houses, one on each of Lots 9 and 10. The partnership also built a garage, intended to be a part of improvements on Lot 10, but actually encroaching on Lot 9 lengthwise of the garage a distance of approximately 2 feet. The garage was built about two-thirds of the way down the lot, with a concrete floor and foundation, and a frame superstructure. There was an overhang of the eaves of approximately 6 inches beyond the 2 feet. The garage was completed sufficient to be used for storage of personal property by August 15, 1952.

On September 17, 1952, the plaintiffs purchased Lot 9 by contract from the partnership, made a substantial down payment, and were delivered the keys to the property.

Clearly both of the contracting parties understood that the purchase and sale involved the 60-foot by 120-foot lot and improvements. Neither of the contracting parties then knew that the garage encroached upon Lot 9. Neither of the parties contemplated that the garage was involved in the sale.

On October 18, 1952, the partnership conveyed Lot 9 to the plaintiffs by deed of general warranty. The reservation here claimed is not made in the deed. Plaintiffs moved into the property about that time.

On January 14, 1953, the partnership conveyed Lot 10 to the defendants, the defendant Harold K. Evans being a grantor as a member of the partnership and a grantee in the deed.

Sometime after plaintiffs moved into the property, a driveway was constructed along the east side of defendants' property. This driveway encroaches on plaintiffs' property its entire length, beginning with 6 inches at the front of the lot and 2 inches at the garage. It

does not appear that an encroachment was actually intended when this driveway was built.

Subsequent to their purchase of the property, plaintiffs undertook to find the exact location of their west line. They could not locate a stake at the southwest corner. They were told by Evans and Moore or by Moore, to measure from the southeast corner. Sometime after Christmas of 1953, plaintiffs did so and always "came up behind this other garage." They related this fact to Moore. He then had the property surveyed in May 1954, when it became definitely known that the encroachments existed as above set out. Evans did not know of the encroachments until he was shown the results of that survey.

The parties then undertook to negotiate a settlement. That failed. In October 1954, this litigation began.

From the above recital of the limited issues made and the evidence, it is patent that the trial court's decree granting a perpetual easement along the west 3 feet of plaintiffs' property is clearly erroneous. It has neither pleading nor facts to sustain it.

Plaintiffs here rely on our decision in Goozee v. Grant, 81 Neb. 597, 116 N. W. 508. The facts in that case are quite similar to the facts here. That case determined an issue of estoppel, such as defendants pleaded here. While not stated in the opinion, that decision may well have turned upon the rule stated in Lingonner v. Ambler, 44 Neb. 316, 62 N. W. 486, and subsequent cases, that: "To create an estoppel in pais the party in whose favor the estoppel operates must have altered his position in reliance upon the words or conduct of the party estopped." The issue which we have here does not appear to have been presented nor decided in the Goozee case.

We have here a case where the owners of property convey a part of it to a third party without reservation or exception, and retain the remainder. The estate conveyed is now alleged to be the servient estate. The

estate retained is now alleged to be the dominant estate. Stated otherwise, the defendants contend that the partnership, contrary to the terms of its deed, and contrary to the intention of the parties, had in law an implied reservation of the land in Lot 9 upon which the garage and driveway encroach.

The only theory upon which defendants can prevail is that at the time the servient estate was conveyed the partnership reserved from the grant the right to continue the encroachment upon Lot 9. This is in effect to permit the grantor to derogate from its express grant.

It is patent that whatever rights of easement, if any, the defendants have over the property of the plaintiffs, arise as a result of, and at the time of, the conveyance by the partnership to plaintiffs. Prior thereto there could not have been an easement. Subsequent thereto nothing occurred upon which a reserved easement by implication could arise. It accordingly follows that defendants have no easement over the plaintiffs' property insofar as that part is concerned where the driveway is located. Plaintiffs are entitled to prevail as to that part of their action. The trial court erred in its decree granting an easement for the driveway.

Defendants here rely on the rule stated in Fremont, E. & M. V. R. R. Co. v. Gayton, 67 Neb. 263, 93 N. W. 163, where we held: "Where an owner of land by any artificial arrangement effects an advantage for one portion as against another, upon severance of the ownership the grantees of the two portions take them respectively charged with the easement and entitled to the benefit openly and visibly attaching at the time of the severance."

The above is a rule of construction generally stated. 3 Tiffany, Real Property (3d ed.), § 781, p. 255.

Defendants also rely upon the decisions in Znamanacek v. Jelinek, 69 Neb. 110, 95 N. W. 28, 111 Am. S. R. 533; Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379; Seng v. Payne, 87 Neb. 812, 128 N. W. 625; De Conly v. Winter

Creek Canal Co., 110 Neb. 102, 193 N. W. 157. There may be other cases of similar import such as Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560, not cited by the defendant.

The first question is: Was the encroachment on Lot 9 open and visible, or apparent?

Obviously the garage was there for anyone to see when the plaintiffs purchased their property. But was it apparent that it encroached upon the property which the plaintiffs bought? It is shown without dispute that neither the plaintiffs nor Moore nor Evans considered that there was an open, visible, or apparent encroachment. It took a survey to establish that fact. The parties did not know of the encroachment until the survey was made demonstrating the fact.

We now go to Reiners v. Young, 109 N. Y. 648, 16 N. E. 368. For reasons stated in the New York report, the opinion was not printed there. It appears in the North Eastern Reporter. There a building was erected by the owner of a property. The property was sold to different grantees. A survey, made later, disclosed that a portion of the building was on land sold to plaintiffs. They brought ejectment. Defendant relied on Lampman v. Milks, 21 N. Y. 505 (being one of the cases relied on by us in Fremont, E. & M. V. R. R. Co. v. Gayton, *supra,* and Znamanacek v. Jelinek, *supra*). The court refused to apply the Lampman case under the facts presented.

The opinion states that "the elements necessary to constitute an easement or servitude are wanting." The opinion further states that: "In the present case there was certainly nothing in the grant of defendant's premises upon which he can found any claim that an easement was annexed to his estate which constituted a charge upon the plaintiffs' estate in respect of the overlapping wall and the fence. His deed is singularly wanting in those features of a grant usually found in transfers of land upon which buildings have been erected, and to which rights might appertain. The description in his

deed of the premises intended to be conveyed thereby is simply of a lot by its metes and bounds, with no mention of buildings, while the habendum clause does not include appurtenances in its language. We do not think, in such or similar cases, upon the severance of a tenement, a reservation should be implied of an easement or servitude in the premises retained by the grantor. Where the easement or servitude is not contained in the grant, the sign of the servitude should be apparent, or, as it was expressed in some of the authorities, and quoted with approval by Judge Rapallo, in Butterworth v. Crawford, 46 N. Y. 349, the marks of the burden should be open and visible."

Then, quite applicable to this case, the opinion states: "It does not appear that it was known to any one that the buildings extended beyond the line of the defendant's lot, and no ordinary or usual inspection or examination, or anything short of a survey, would probably have revealed that fact. It was undoubtedly the result of inadvertence in the erection of the building and of the fence. It is impossible, therefore, to say that there was here an apparent sign or mark of a servitude in, or of a burden upon, the premises now owned by the plaintiff. * * * I think that it is an untenable view of the situation of the parties when the premises now owned by defendant were transferred, and that what the rule requires is that the fact that the premises retained by the grantor are a servient tenement charged with an easement should be patent as a feature of the land which directs the attention to its existence upon such examination as would be ordinarily given."

The question arose in Ashton v. Buell, 149 Wash. 494, 271 P. 591. There a walk encroached upon adjoining property. The walk was visible for all to see. There the court held: "An inspection of the premises would not disclose the fact that this walk projected over upon the property which respondents were buying. It would require an actual survey to determine that fact. Such a

servitude is not open, visible and apparent. Reiners v. Young, 109 N. Y. 648, 16 N. E. 368; Sloat v. McDougal, 9 N. Y. Supp. 631."

It becomes evident, then, that defendants' evidence does not meet the tests of being open, visible, or apparent under the rule in Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*, and our cases which followed it, and for that reason the trial court's decree is erroneous.

Defendant also relies on Christensen v. Luehrs, 133 Neb. 50, 273 N. W. 839, wherein we cited Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*, and other cases.

The Christensen case was a case dealing with an implied grant of an easement in a common driveway, and was decided on the authorities dealing with implied grants. We there quoted from 19 C. J., Easements, § 103, p. 914, § 104, p. 915. We discussed the degree of necessity required by reference to § 112, p. 919. It is important to note that we did not discuss, cite, or rely on the rule with reference to an "Implied Reservation" which is stated in the same authority, § 113, p. 920. We will refer to that rule later.

We decided Christensen v. Luehrs, *supra*, on the basis that it was one dealing with an "implied grant or dedication" and on the basis of reasonable necessity, tested by the rules stated therein.

It appears then implicit in this case is a recognition of the fact that our rule stated in Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*, is not an all-inclusive rule and that the factor of necessity is involved in cases dealing with implied grants and implied reservations. We here are dealing with an implied reservation.

It does not appear in our decisions heretofore that we have recognized the distinction between an easement based on an implied grant and one based on an implied reservation. The latter, being one in derogation of the grant, is subject to a different rule.

Restatement, Property, § 476, p. 2979, states the rule and the reason in this way: "In construing conveyances

doubts are resolved in favor of the conveyee and against the conveyor. To a greater extent than is true of the conveyee the conveyor controls both the language of the conveyance and the circumstances under which it is made and has the power to make the language of the conveyance express the intention of the parties. To the extent to which this is true, his failure to make it do so is held to operate to his disadvantage rather than to the disadvantage of the conveyee. What is true in construing the language of a conveyance is likewise true in drawing inferences from the circumstances under which the conveyance was made. Accordingly, circumstances which may be sufficient to imply the creation of an easement in favor of a conveyee may not be sufficient to imply the creation of one in favor of the conveyor."

In 1 Thompson on Real Property (Perm. Ed.), § 391, p. 633, it is said: "There is a well-recognized, distinction between an implied grant and an implied reservation." Also in section 391, page 634, it is stated: " 'As a grantor can not derogate from his own grant, while a grantee may take the language of the deed most strongly in his favor, the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor, and this distinction explains many of the apparent inconsistencies in the reported cases.' " In section 394, page 642, it is stated: "Implied grants are not favored, however, though more favored than implied reservations * * *."

In 17 Am. Jur., Easements, § 45, p. 956, the reason for the rule and the rule itself are stated in this language: "The doctrine under which the existence of an apparent easement affords the basis for the creation of an implied easement is applied in many jurisdictions to create an easement in a grantor by implied reservation. In some states, the grantor stands upon an equal footing with the grantee and any distinction between implied grants and implied reservations is denied. In the majority of the states, a distinction is recognized

between an implied grant and an implied reservation; and where there is a grant of land with full covenants of warranty, and without express reservation of an easement, it is held that there can be no reservation by implication, unless the easement is strictly necessary, the term 'necessary' being interpreted to signify the absence of any other reasonable mode of enjoying the dominant tenement without the easement. The reasoning upon which this distinction is based is that a grant is taken more strongly against the grantor, and the law will imply an easement in favor of the grantee more readily than it will in favor of the grantor. If the grantor intends to reserve any right over the tenement granted, it is his duty to reserve it expressly in the grant."

In 28 C. J. S., Easements, § 34, p. 694, the rule and the reason are stated in this language: "According to one view, no distinction is made between the circumstances under which an easement may be regarded as impliedly reserved and those under which it may be regarded as impliedly granted; however, according to another view, an easement is impliedly reserved only where one of strict necessity.

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one against which such quasi easement exists, such easement, if necessary to the reasonable enjoyment of the property retained, is, under what is perhaps the more generally accepted rule, impliedly reserved to the grantor, no distinction being made between the circumstances under which an easement is regarded as impliedly granted and those under which one is regarded as impliedly reserved. Other authorities, however, urge that a grantor should not be permitted to derogate from his grant and accordingly in many jurisdictions the rule is established that, where there is a grant of land without express reservation of easements, there can be no

reservation by implication, unless the easement is strictly one of necessity, particularly where the grant is with full covenants of warranty."

Because of our citation of Corpus Juris on implied grants in Christensen v. Luehrs, *supra,* we here quote that text on "Implied Reservations": "As regards implied reservations of easements the matter stands on principle in a position very different from implied grants. If the grantor intends to reserve any right over the tenement granted it is his duty to reserve it expressly in the grant. To say that a grantor reserves to himself in entirety that which may be beneficial to him, but which may be most injurious to his grantee, is quite contrary to the principle upon which an implied grant depends, which is that a grantor shall not derogate from, or render less effectual, his grant, or render that which he has granted less beneficial to his grantee. Accordingly in many jurisdictions the rule is established that where there is a grant of land with full covenants of warranty without express reservation of easements, there can be no reservation by implication, unless the easement is strictly one of necessity, for the operation of a plain grant not pretended to be otherwise than in conformity with the contract between the parties ought not to be limited and cut down by the fiction of an implied reservation." 19 C. J., Easements, § 113, p. 920.

In 1 Thompson on Real Property (Perm. Ed.), § 396, p. 645, the rule is stated in this language: "As a general rule, there is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained. A grantor, as we have seen, can not derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation." Also in section 396, page 647, it is stated: "The essential elements of an easement

reserved by implication are: (1) Unity and subsequent separation of title; (2) obvious benefit to the dominant and burden to the servient tenement existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was intended to be permanent; and (4) necessity for the easement."

Restatement, Property, § 476, p. 2977, lists eight factors to be considered, and in the comment says: "In determining implications of this character, the tendency is to isolate and to assign a specific value to such factors as frequently recur. Thus, it may be said that where the factor of necessity exists a particular implication arises. Properly, however, the implication involves a consideration of all the factors present. They are variables rather than absolutes. None can be given a fixed value. Each affects the decision as to the implication arising from all in a different degree in different situations. * * * The list of factors here stated is not exhaustive. The circumstances through which the implication of an easement may arise are varied. The factors relevant to the determination of the implication are numerous. Those here considered are those more commonly occurring."

There are a number of decisions of other states dealing with comparable situations where an implied reservation of an easement is claimed. Those that we have examined largely sustain the view that there is no implied reservation of an easement unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained.

The Court of Appeals of Missouri states the reason for the strict necessity rule in this language: "If any other rule than that of strict necessity were adopted, the door would be open to doubt and uncertainty, to disturbance and questioning of title, and to controversies outside the language and limits of the deed. If an estate, granted

without exception or reservation, can be forever incumbered by an easement or right of use by a third party on a finding that such use would be highly convenient, or that it was exercised by a former owner, or that it was notorious, or any other grounds short of strict necessity, the sanctity and security of title by deed, unambiguous in its terms, would be seriously injured." Seested v. Applegate (Mo. App.), 26 S. W. 2d 796. See, also, Foxx v. Thompson, 358 Mo. 610, 216 S. W. 2d 87, where the Seested case is discussed and the authorities reviewed. See, also, Bubser v. Ranguette, 269 Mich. 388, 257 N. W. 845.

We now return to our decision in Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*. A distinction between an implied easement and an implied grant is not mentioned. There the dominant estate was conveyed first with a right-of-way reserved. The servient estate conveyance was made years later subject to the right-of-way of the dominant estate. It was held that the easement over the servient estate was obvious and permanent and could not escape notice. We there quoted from 2 Washburn, Real Property (5th ed.), § 29. That section deals generally with "implied or equitable easements." The same author has a separate section dealing with an "implied reservation." 2 Washburn, Real Property (6th ed.), § 1248, p. 292.

The same author in his Easements and Servitudes (4th ed.), § 3, p. 81, has this to say: "The American annotator of 1 B. & Smith's Reports, in a note to Pearson v. Spencer, says: 'It may be considered as settled in the United States, that, on the conveyance of one of several parcels of land belonging to the same owner, there is an implied grant or reservation, as the case may be, of all apparent and continuous easements or incidents of property, which have been created or used by him during the unity of possession, though they could then have had no legal existence apart from his general owner-

ship.' And he cites numerous cases as tending to establish that general proposition.

"But while this would seem to sustain and be fully sustained by the case of Pyer v. Carter, the inference to be drawn from Carbrey v. Willis and Randall v. McLaughlin seems to be, that though this would be true where the dominant estate is conveyed and the servient estate reserved, it would not be so where the servient estate is granted and the dominant reserved, unless the easement claimed is one strictly of necessity, and another cannot be substituted at reasonable labor and expense."

He there recognizes the factor of strict necessity in cases of implied reservations. See Thompson, *supra*, § 400, p. 653, for a further like discussion of the earlier decisions.

In Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*, we relied on Lampman v. Milks, 21 N. Y. 505 and Janes v. Jenkins, 34 Md. 1, 6 Am. R. 300. Because of that reliance, we now quote from subsequent decisions of those courts. Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99, was a case involving an implied grant. The court discussed Lampman v. Milks, *supra*, and then said: "In this state the rule of strict necessity is applied to implied reservations but not to implied grants. In the recent case of Wells v. Garbutt (132 N. Y. 430), it was said: 'As a grantor cannot derogate from his own grant while a grantee may take the language of the deed most strongly in his favor the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor.'

"This distinction between implied reservation and implied grants there pointed out is well founded in the law, although in some of the reported cases it has apparently been overlooked."

So it would seem that New York is in accord with the rule herein adopted applicable to implied reservations.

We now refer to the case of Slear v. Jankiewicz, 189

Md. 18, 54 A. 2d 137, certiorari denied, 333 U. S. 827, 68 S. Ct. 453, 92 L. Ed. 1112. There the court held: "Since Mitchell v. Seipel, 53 Md. 251, 36 Am. Rep. 404, a distinction has been made between an implied grant and implied reservation. 'The rule with respect to implied reservations is much more strict than that with respect to implied grants.' * * * In the opinion last quoted (Burns v. Gallagher, 62 Md. 462, 474), Judge Alvey also stated the rule of construction regarding reservation of easements by implication: 'For the principle is well settled, and it is founded in reason and good sense, that no easement or quasi easement can be taken as reserved by implication, unless it be de facto annexed and in use at the time of the grant, and it be shown moreover to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. * * * In order to give rise to the presumption of a reservation of an existing easement or quasi easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or quasi easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. * * * It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked.' "

In Fremont, E. & M. V. R. R. Co. v. Gayton, *supra,* we cited and relied upon Cihak v. Klekr, 117 Ill. 643, 7 N. E. 111. In the later case of Sprenzel v. Windmueller, 286 Ill. 411, 121 N. E. 805, that case is cited as authority for this statement as to an implied grant: "Where the owner of land divides it and sells one part, he by implication includes in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form they

were at the time he transferred the property."

So it would appear that Illinois recognized that the factor of reasonable necessity is applicable to implied grants.

But here we are dealing with an implied reservation. Consistent with the above authorities, we adopt the rule applicable to implied reservations as stated in 1 Thompson, § 396, p. 645, which we again quote: "As a general rule, there is no implied reservation of an easement in case one sells a part of his land over which he has previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained. A grantor, as we have seen, can not derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation."

The question then comes: Has the defendant met the test of the factors of the rule applicable to an implied reservation and, specifically, does the evidence meet the test of strict necessity?

There is no evidence that either the encroachment of defendants' driveway or garage on plaintiffs' property is a necessity. The evidence of defendant Evans is that he could move the garage a short distance to the west and solve this problem. In fact his evidence is that he offered to do so during the negotiations after this dispute arose. It appears from the evidence that defendants have ample space for a driveway on their own lot and the entire backyard on which to locate the garage all on their own property.

Bubser v. Ranguette, *supra*, is a comparable case. There, while two lots were in single ownership, a brick building was built on Lot 5. Later a frame addition was built which encroached on Lot 4. Lot 4 was sold to the defendant and Lot 5 was later sold to the plaintiff. The court held: "The servient estate, lot 4, was conveyed some three months before the conveyance of

the dominant estate, lot 5. Hence the only theory upon which plaintiff can claim an easement is that at the time the servient estate was conveyed the then owner of both lots impliedly reserved from the grant the right to continue the encroachment thereon—in short, an easement by implied reservation. To read an implied reservation into a deed is in effect to permit the grantor to derogate from his express grant. We have held that: 'To entitle the complainant to a decree, the burden was upon him to establish that the servitude was apparent, continuous and strictly necessary to the enjoyment of his lands.' " The court held that the servitude of the encroachment of "almost six feet" was apparent and continuous. In this case the one claiming the implied easement relied on a rule comparable to ours as stated in Fremont, E. & M. V. R. R. Co. v. Gayton, *supra*, and Christensen v. Luehrs, *supra*. The court reviewed many authorities, and held: "Having required strict necessity in cases involving stairways, drains, ways and sewers, we prefer to make no exception to that rule in encroachment cases even though, in such a case, the servitude be plainly apparent. To make such an exception, would leave for further litigation the exact amount of encroachment necessary to make the user apparent. Nor should the law favor unrecorded servitudes." The Supreme Court of Michigan, holding that the servitude was not strictly necessary, adopted the language of the trial court as follows: " 'The situation of both premises does not show any strict necessity for plaintiff's continued encroachment upon lot 4. Its use is convenient but not necessary. To withdraw from it will mean some expense but not a heavy one to the plaintiff. He has plenty of room on his own premises to make his building convenient for use at an expense not prohibitive. The question here is one of convenience rather than of strict necessity. Defendant is entitled to have what he bought.' "

The defendants here also advance the contention that

plaintiffs had recognized and acquiesced in the implied reservation of the easement. The evidence does not sustain such a contention.

Consistent with the above authorities, we reverse the judgment of the trial court and remand the cause with directions to enter a judgment for the plaintiffs.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., participating on briefs.