The **TOWN OF EAST HAVEN** et al.,
Plaintiffs,

v.

**EASTERN AIRLINES, INC.,** et al.,
Defendants.

Civ. A. No. 12175.

United States District Court,
D. Connecticut.

Nov. 1, 1971.

Cohen & DeMayo, New Haven, Conn., for plaintiffs; Anthony V. DeMayo, New Haven, Conn., of counsel.

Roger J. Frechette, New Haven, Conn., for defendant City of New Haven.

## SUPPLEMENTARY OPINION

McLEAN, District Judge.*

In my decision dated July 30, 1971, 331 F.Supp. 16, I stated that unless the parties stipulated to the amount of compensation to be paid by defendant City of New Haven to certain individual plaintiffs for the easement in their properties which I found to have been taken, I would hold a further hearing at which both sides might offer testimony on that subject. No stipulation was forthcoming and accordingly, a further hearing was held on October 18, 1971. Plaintiffs called two real estate appraisers and defendant City of New Haven called one, the same expert who had testified for the City at the trial.

Defendant's expert did not testify to a sufficient number of sales of comparable properties to afford any basis for determining the diminution of market value of the properties in question. Instead, he adhered to the opinion which he had previously expressed at the trial, i. e., that none of the plaintiffs has been damaged because the noise, soot and vibrations emanating from the planes approaching and taking off from the airport have had no adverse effect whatever on the market value of plaintiffs' properties. This conclusion defies common sense and I decline to accept it. I have no doubt that plaintiffs have been damaged. The question is whether plaintiffs have succeeded in proving the amount of that damage with reasonable certainty.

Plaintiffs' experts testified to their opinion as to the market value of the respective properties before the taking and the market value of those properties after the taking, the difference being the damage.[1] Their opinion as to the market value before the taking was based on data as to sales of comparable properties, except in two instances, in which, there being no comparable sales, the opinion was based on reproduction cost less depreciation. Except for one property, plaintiff Munro's residence at 110 Morgan Avenue, defendant does not challenge the accuracy of plaintiffs' figures for the market value before the

---

* Of the Southern District of New York, sitting by designation.

1. The business property at 52 South End Road, formerly owned by plaintiff Jones, was sold by him on January 2, 1969. Plaintiffs' experts' appraisal for that property speaks as of that date. Their appraisals for all the other properties purport to speak as of September 15, 1971, almost a year after the trial. They testified, however, that their opinion would be the same as of October 1970, the time of the trial. I will treat it as referring to the earlier date.

taking. Defendant's attack on the valuation of 110 Morgan Avenue does not affect the result significantly. The controversy thus relates primarily to plaintiffs' experts' opinion as to the market value of the respective properties after the taking.

Plaintiffs' experts testified, in substance, that it was not feasible to determine this value by comparing sales of properties in the vicinity of the airport with sales of similar properties in other neighborhoods because the sales data was inconclusive. The variations in price were too great to permit the drawing of any sound conclusions. They therefore based their opinion primarily upon a formula which has been developed by one Thomas Hall and explained by him in articles in real estate appraisers' trade journals. It is designed to determine the amount of the diminution in the market value of properties adjacent to airports due to airport operations. The formula takes into account three factors: (1) the height of the planes over the subject property up to a maximum of 500 feet; (2) the distance of the property from the extended center line of the runway up to a maximum of 2,000 feet; (3) its distance from the end of the runway up to a maximum of 25,000 feet. Hall ascribed different weights to these factors, giving the greatest weight to the first, the height of the passing planes. Plaintiffs' experts agreed with this weighting in general, but varied somewhat the weight which Hall ascribed to the second and third factors in order to make the formula, in their opinion, more appropriate for this particular airport. Application of this formula yielded a percentage by which the market value of the property before taking should be reduced in order to arrive at its market value after taking. Since this is done by means of a percentage, it is apparent that in two cases in which the percentages are approximately the same, the dollar amount of the reduction will be larger in the case of a property having a high market value before taking than it will be in the case of a property having a low prior market value.

We are dealing here with expert opinion. No opinion is necessarily conclusive. Use of this formula in an airport case, in the absence of any other pertinent data, seems to me to afford a reasonable basis for the experts' opinion. Since I have been given no further pertinent data here, I have decided to apply the formula which, incidentally, produces a result substantially lower than the opinion expressed by plaintiffs' expert at the trial, which I declined to accept. Under all the circumstances, I would not feel justified in rejecting plaintiffs' evidence in its entirety, as defendant suggests.

The service station formerly owned by plaintiff Jones at 52 South End Road, however, is a special case. As to that property, the decision of July 30, 1971 stated (p. 33 n.) that an easement could be granted if Jones could prove "that, because of the overflights, he received less for the property which he sold than he would otherwise have received." Jones has not come forward with that proof. On the contrary, plaintiffs' experts expressed the opinion that the fair market value of the Jones property before the taking was $25,000. This is exactly the figure that Jones sold it for on January 2, 1969. Hence it affirmatively appears that Jones has not been damaged.

Defendant argues that because Jones sold his property in January 1969 for the sum which plaintiffs' experts consider to have been its fair market value before the taking, therefore the other plaintiffs also could sell their properties for their market value before the taking and hence they have not been damaged either. This does not necessarily follow. Moreover, it may be noted that in January 1969, when Jones sold his service station, neither Eastern nor Allegheny was operating jets, only turbo props. See decision of July 30, 1971, pp. 20, 21.

On the basis of all the evidence, I find that the fair market value of the proper-

ties of the following plaintiffs has been reduced in the following amounts by the taking:

| | |
|---|---|
| Michael Fusco | |
| 25 Holmes Street | $2,500 |
| Leslie Munro | |
| 110 Morgan Avenue | 2,850 |
| Leslie Munro | |
| 114 Morgan Avenue | 2,100 |
| Michael Criscuolo | |
| 72 Morgan Avenue | 3,200 |
| Alphonse Guidone, Jr. | |
| 6 Canna Drive | 2,250 |
| Louis Audette | |
| 10 Silver Sands Road | 2,200 |
| Leon Amendola[2] | |
| 2 Meadow Place | 3,300 |

These plaintiffs are entitled to judgment against defendant City of New Haven in the foregoing amounts. If any of the parcels is in the joint names of a plaintiff and his wife, the judgment should be in favor of both. I permitted the wives to be joined as plaintiffs for that purpose. See decision of July 30, 1971, p. 18.

Upon payment of the judgments, defendant City of New Haven will acquire a permanent easement in the properties of these plaintiffs for the operation of a similar number of turbo prop planes and jet planes of the size in use at the time of the trial. See decision of July 30, 1971, p. 34.

Defendant City of New Haven is entitled to judgment dismissing the claim of plaintiff Jones on the merits.

Although judgment has been entered since July 30, 1971 in favor of Eastern Airlines and Allegheny Air Lines, no judgment has as yet been entered with respect to the claims of the various plaintiffs against defendant City of New Haven. As stated at the conclusion of the decision of July 30, 1971, p. 36, defendant City of New Haven is entitled to judgment dismissing all claims except the claims for compensation allowed in this supplementary opinion.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

Judgment may be entered accordingly. So ordered.

---

2. The percentage of diminution is less in Amendola's case than any of the seven plaintiffs, 6.3 per cent as opposed to percentages in other cases running as high as 9.5 per cent. As it happens, however, Amendola's house is more elaborate than any of the others and had a substantially higher market value prior to the taking, hence his damages turn out to be slightly more than those of the other plaintiffs.