The **TOWN OF EAST HAVEN** et al.,
**Plaintiffs-Appellees,**
v.
**EASTERN AIRLINES, INC.,** et al.,
**Defendants,**
**City of New Haven, Appellant-Defendant.**
**No. 22, Docket 72–1137.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1972.

Decided Nov. 22, 1972.

Roger J. Frechette, Asst. Corp. Counsel, New Haven, Conn., for appellant-defendant.

Anthony V. DeMayo, New Haven, Conn. (Cohen & DeMayo, New Haven, Conn., of counsel), for plaintiffs-appellees.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

MOORE, Circuit Judge:

The plaintiffs are the Town of East Haven and property owners whose properties are in the vicinity of the Tweed-New Haven Airport, an airport owned and operated by the City of New Haven (the City). The defendants are the City of New Haven, Eastern Airlines and Allegheny Airlines, Inc.[1] After a non-jury trial, the District Court dismissed the action against the airlines and dismissed all claims against the City except claims for compensation for easements taken by the City in seven specific properties of seven plaintiffs. After a supplemental hearing as to damages, the District Court awarded various amounts ranging from $2,100 to $3,300 for a total of $18,400.[2] "Upon payment of the judgments, defendant City of New Haven will acquire a permanent easement in the properties of these plaintiffs for the operation of a similar number of turbo prop planes and jet planes of the size in use at the time of the trial [October 14–27, 1970]." 333 F.Supp. 338, 341 (S.D.N.Y.1971). The City appealed from the award of damages to those property owners.

The history of the development of the airport and its commercial use by Eastern and Allegheny Airlines as well as by private planes has been graphically and thoroughly set forth in the late Judge McLean's opinion, 331 F.Supp. 16 (1971). The location of the properties owned by the individual plaintiffs (the recipients of the damage awards) in relation to the airport and its runways has been described in his original and supplemental opinions, 331 F.Supp. at 21–26 and 333 F.Supp. 338 (1971).

The airport serves the City of New Haven and accessible cities and towns. It has been developed by the City aided by federal funds, pursuant to the National Airport Plan authorized by the Federal Airport Act, 49 U.S.C. § 1101 et seq.

The appellate issues before us are exceedingly limited. In fact the City concedes as much, saying (Brief, p. 11): "The question is whether plaintiffs have succeeded in proving the amount of that damage with reasonable certainty." The City claims that plaintiffs have proved no damage. No issue of injunctive relief is raised. The District Court denied any such relief, stating: "The right of the public to travel by air by means of modern airplanes far outweighs the disadvantage to the relatively few persons, such as these plaintiffs, who are adversely affected to some extent." 331 F.Supp. at 30. Moreover, "Trespass, Annoyance and 'Emotional Damage'," as well as nuisance were rejected as items of damage by the Court. In short, the City questions only the award of dam-

---

1. Originally the Administrator of the Federal Aviation Agency was a party defendant. On motion the action against him was dismissed. The City was added as a defendant in an amended complaint.

2. Michael Fusco .......... $2,500
   Leslie Munro ........... $2,850
   Leslie Munro ........... $2,100
   Michael Criscuolo ....... $3,200
   Alphonse Guidone, Jr. .... $2,250
   Louis Audette ........... $2,200
   Leon Amendola .......... $3,300

ages for the easements taken in these specific seven properties.

The City's arguments assert many grounds. First, the City attacks the quality of, and the method used by, the plaintiffs' damage appraiser and extols the opinion of its own. Differences in opinions of appraisers in real estate valuation cases are not altogether surprising. The Trial Court had to, and did, weigh the testimony presented by all the parties and arrive at his own conclusions. Second, the City points to the fact that the plaintiffs acquired their properties subsequent to the creation of the airport. This fact alone is not determinative because, as the Trial Court found, plaintiffs' "grievances are based on later operations of turbo-prop and jet aircraft, particularly the jets." 331 F. Supp. at 20. Although the City takes issue with this conclusion, there can be no doubt that the advent of the jets aggravated the situation. As to the City's third claim, that the Court found it guilty of trespass, the Court held that "there should be no separate recovery by any plaintiff of damages for trespass, either against the City or against the airlines. * * * Where there has been no taking because there has been no significant invasion of plaintiffs' property, it would seem to follow, at least as far as the City is concerned, that there has been no trespass on that property." (*Id*. p. 35). Fourth, the City asks, "Can you have a taking when the value of the property has appreciated?" (Brief, p. 31). The answer is clearly "yes". The Court, after weighing all the testimony, quite properly found that the fair market value of certain of the plaintiffs' properties had been reduced, even though this value exceeded the original acquisition cost. 333 F.Supp. at 340. His discriminating approach is evidenced by the denial of damages to five other party plaintiffs. Fifth, the attack upon jurisdiction and the claim of *res judicata* made by the City are rejected. Lastly, the City urges that there is "Uncertainty of Judgment" in that the judgment does not "indicate with reasonable clearness the decision which the Court has rendered * * *." The City asks (Brief, p. 61) what kind of "an easement which is not defined as to length, width, height, or actual use, * * *" will it receive upon payment of the judgment awards, and in what form will such an easement be drafted in order to be recorded in the Land Records office.

To a certain extent the last point is well taken but it does not render the judgment void for uncertainty, as the City argues. At the time of trial, the Court had before it the specific flight schedules of Allegheny and Eastern. Allegheny operated five flights per day with Convair 580's (turbo-props) which necessitated five landings and five departures. Eastern operated two jet flights, with two arrivals and two departures. In addition, numerous private and corporation-owned planes (some jets) used the airport. The airport is operated by employees of the Federal Aviation Agency who control all traffic in and out of the airport. Directions for landing and take-off are given from a control tower and the runways to be used, of necessity, must be determined by wind, weather and other conditions.

Control of air navigation must be in the hands of the Agency. Certain it is that the courts should give no direction or even suggestion as to its operation. Even more so should the courts make no brash predictions as to the future of air transportation. The history of the development of the passenger plane alone should be a deterrent to prophesy. Forty years ago planes carrying a few passengers could land and take off on short runways—virtually cow pastures. Soon came a series of planes capable of carrying many passengers, landing and taking off at high speeds and requiring ever lengthening runways. Witness the DC series of 3's, 4's, 6's, 7's, 8's, 9's, 707's, 727's, 737's and now the giant 747.

The planes are available. Whether the City of New Haven will wish to have them is, or should be, entirely a legislative decision. Already the populace has

apparently aligned itself into two factions—those who wish to preserve the comparative peace and quiet of their residential communities and ban further expansion of the airport so as to prevent invasion by even noisier planes, and those who would measure "progress" by their ability to go from New Haven to some other city in minutes or a few hours.[3] And in the background is always the specter of the supersonic plane.

What the future will hold is not for present Court conjecture. Were we to heed the wisdom of an earlier era, we would know that "The Moving Finger writes; and, having writ, Moves on; * * *."[4] Aviation has indeed moved on. Thus the past decisions that have been "writ" dealing with invasions of property rights are useful only for their attempted creation of general principles. Obviously, a rule of reason approach must be followed in the resolution of future problems.

The judgment of the court below does not require that the City receive a formal easement from each plaintiff to whom damages have been awarded. Nor do we. The opinion states, as definitely as the situation permits, the basis for the taking that occurred. For this the court has awarded damages, presently payable for the present invasion.

Neither the opinion below nor this opinion is to be construed as a template for the future. Whether the Tweed-New Haven Airport will be expanded to permit larger aircraft to land and take off; whether the required glide paths of such planes will affect other residents in a manner similar to that affecting the plaintiffs in this case; whether a *substantial* variation from the type of air service in effect at the time of the District Court trial will cause further harm to the present plaintiffs; whether

some agency of government will issue a decree which will affect property rights —these conjectures are not within the purview of this decision and no opinion is expressed thereon. The judgment appealed from merely requires the City to pay for that which it has already taken. We have considered all of the City's other contentions; none of them has merit.[5]

We affirm.

---

3. The planning consultant of East Haven expressed the opinion that the noise and pollution caused by the jets would adversely affect the stability of the area; the chairman of the Industrial Development Committee of the Greater New Haven Chamber of Commerce spoke in glowing terms of the advantages of fast transportation as a stimulant to industrial development. 331 F.2d at 27.

4. Rubaiyat of Omar Khayyam.

5. The City has moved to file a supplemental brief. The motion is denied.