UNITED STATES of America

v.

The CITY OF NEW HAVEN et al.

Civ. No. 14264.

United States District Court,
D. Connecticut.

Feb. 22, 1973.

---

Harland F. Leathers, David J. Anderson, U. S. Dept. of Justice, Civil Div., Washington, D. C., Stewart H. Jones, U. S. Atty., New Haven, Conn., for plaintiff; Martin J. White, Chief Coun., Eastern Region Federal Aviation Administration, Jamaica, N. Y., of counsel.

Roger J. Frechette, Corp. Counsel's Office, City of New Haven, Anthony V. DeMayo, Cohen & DeMayo, New Haven, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, Chief Judge.

This motion sets the stage for the final act in the protracted litigation growing out of the expansion of Tweed-New Haven Airport. In October of 1966, the City of New Haven, operator of the airport, applied to the Federal Aviation Administration (FAA) for federal funds to finance an 829' extension of runway 2–20. A grant agreement was executed on April 4, 1967, under which the United States committed nearly one-half million dollars to development of the airport, including extension of the runway, which enabled jet airplanes to use the airport.[1] While the area used for the extended runway lies entirely within the boundaries of New Haven, it abuts on the boundary line of the Town of East Haven, the real defendant in the present action. In order to establish a so-called "clear zone"[2] in the area im-

---

1. Under a subsequent agreement, the government contributed additional funds for the cost of overlaying and marking the original length of runway 2–20. Contrary to East Haven's insistence, this agreement is irrelevant to the present litigation because no improvements on the original length of the runway affect East Haven in any way.

2. Some confusion has surrounded this term. It is defined by the FAA as follows:

"For the purpose of this part, a runway clear zone is an area at ground level which begins at the end of each primary surface

defined in § 77.27(a) and extends with the width of each approach surface defined in § 77.27(b) and (c), to terminate directly below each approach surface slope at the point, or points, where the slope reaches a height of 50 feet above the elevation of the runway or 50 feet above the terrain at the outer extremity of the clear zone, whichever distance is shorter." 14 C.F.R. § 151.9(b). A clear zone is a ground level area beyond the runway to be kept clear of vertical structures that could interfere with low-flying aircraft.

mediately beyond the end of the extended runway, the city bought 73 acres of land in East Haven. The Superior Court of New Haven County found this acquisition in violation of state law for failure to obtain the town's approval, and on that basis enjoined the expansion of the airport "on or over any portion of East Haven . . . whether such expansion takes the form of physical expansion or the mere maintenance of clear zones over the property located in East Haven." Town of East Haven v. City of New Haven, No. 11 34 35 (Super.Ct., New Haven Cty.). This judgment was affirmed by the Connecticut Supreme Court, 159 Conn. 453, 271 A.2d 110 (1970). When the city continued to use the extended length of the runway, the Superior Court issued a contempt order threatening the city with the in terrorem provision of a fine of $1000 per day if it did not cease using the extension *"in conjunction with the presently expanded clear zones in the Town of East Haven."* Contempt Order (Super.Ct., New Haven Cty. Aug. 26, 1970) (emphasis added). The city complied by closing the disputed portion of the runway. The United States thereupon brought suit in the federal court of this district, asking that the city be ordered to keep the entire runway open to air traffic and that the town, which had obtained the contempt order, be enjoined from taking steps to enforce it and to request its dissolution. Judge Thomas Murphy of the Southern District of New York, sitting in this district by designation, granted the preliminary injunction sought by the United States in an unreported opinion dated June 25, 1971. His decision granting the requested relief was affirmed soon afterward. United States v. City of New Haven, 447 F.2d 972 (2d Cir. 1971). The plaintiff now moves for summary judgment to make permanent that preliminary injunction. Since there are no issues of material fact in dispute, the case is ripe for disposition on that motion. Fed.R.Civ.P. 56.

### I.

■■ Congress has enacted a thorough and detailed system of regulation of air traffic.[3]

"It would be difficult to visualize a more comprehensive scheme of combined regulation, subsidization and operational participation than that which the Congress has provided in the field of aviation." American Airlines, Inc. v. Town of Hempstead, 272 F.Supp. 226, 232 (E.D.N.Y.1967), aff'd, 398 F.2d 369 (2d Cir. 1968), cert. denied, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed. 2d 561 (1969).

In particular with respect to the regulation of "navigable airspace," Congress has legislated so pervasively that state provisions inhibiting that regulation, whether in the form of legislation or judicial decision, must be declared invalid under the supremacy clause.[4]

The full breadth of federal pre-emption of regulation of navigable airspace is demonstrated by an examination of the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 et seq. Section 1301(24) defines the term: " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations . . . and shall include airspace needed to insure safety in takeoff and landing of aircraft." Because of the paramount concern for safety, courts have interpreted that definition to encompass airspace *below* the minimum flight altitude.

---

3. The most important of the many statutes Congress has passed to regulate air transport are the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 et seq., and the Airport and Airway Development Act of 1970, 49 U.S.C. §§ 1701 et seq., both of which superseded earlier comprehensive legislation.

4. Article VI, Cl. 2 of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Allegheny Airlines v. Village of Cedarhurst, 238 F.2d 812 (2d Cir. 1956); City of Newark v. Eastern Airlines, 159 F.Supp. 750 (D.N.J.1958). Section 1304, bestowing upon "any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States," has also been read to indicate a congressional intention to pre-empt the field of air traffic regulation. American Airlines, Inc. v. Town of Hempstead, *supra*, 272 F.Supp. at 231; City of Newark v. Eastern Airlines, *supra*, 159 F.Supp. 750. Finally, § 1348(a) grants extremely broad power to the FAA administrator to formulate policy and prescribe rules governing the use of navigable airspace.

There is no dispute that the airspace above the 73 acres the city attempted to acquire in East Haven falls within the definition of "clear zone" set out in 14 C.F.R. § 151.9(b). Nor in view of the statutes and case law previously discussed is there any doubt that the FAA had the power to designate that area as a clear zone. Thus, the order of the New Haven Superior Court was directed to and conflicted squarely with the regulation of navigable airspace which Congress has reserved for exclusive federal control. To the extent that it prevents aircraft from using navigable airspace it is unenforceable under the supremacy clause and may properly be enjoined by a federal court, despite the broad sweep of the anti-injunction statute, 28 U.S.C.

§ 2283.[5] See NLRB v. Nash-Finch Co., 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).[6]

I appreciate the concern of the Connecticut courts that the laws of the state be obeyed, but the federal government's ability to proceed with airport development is not contingent upon the peculiarities of local property laws. As the United States has said in its brief, the legality under state law of New Haven's acquisition of the clear zone area is entirely separate from the question of the power of the state court to enjoin airport operations, whose regulation Congress has entirely pre-empted. It may be that the state courts will require the return of title to the clear zone area to its original owners,[7] and that they will find the restriction on the use and development of that land a taking of property requiring just compensation. Cf. Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). Such vindication of the town's rights under state law will not affect the operations of the airport and thus would raise no issue under the supremacy clause. Federal preemption does not wash away all rights under state law; it merely requires that the remedy employed to enforce those rights not encroach upon the areas regulated by federal law.

---

5. 28 U.S.C. § 2283 provides:
   "Stay of State court proceedings
   "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

6. In Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), Justice Stewart presented an exhaustive analysis of the history and underlying policy of § 2283. After discussing certain exceptions to the prohibition against federal court injunctions against state proceedings, he stated:
   "[s]till a third exception, more recently developed, permits a federal injunction of state court proceedings when the plaintiff

in the federal court is the United States, itself or a federal agency asserting 'superior federal interest.'" 407 U.S. at 235–236, 92 S.Ct. at 2159 (citing *Nash-Finch* and *Leiter Minerals*).
See also, Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944), decided before the revision of § 2283 four years later.

7. Undoing the transaction by which the city of New Haven acquired title in order to remove a possible imperfection in that title would probably require that the former owners be cited in as necessary parties and, eventually, after considerable effort and possible further litigation, will result only in recasting the transaction into a different form. I forego discussion of all of the ramifications which such a ruling would spawn.

## II.

East Haven also argues that New Haven misrepresented or failed to disclose material facts in its grant application to the FAA and that the agency failed to follow its own regulations in approving the application. It claims that the FAA was not informed of East Haven's intense opposition to the runway extension, and thus did not hold a public hearing as provided by 49 U.S.C. § 1108(e).[8] This argument overlooks the fact that the regulation cited by the town, 14 C.F.R. § 151.26(b),[9] did not become effective until January 27, 1967, three months after the grant application was submitted.[10] Moreover, East Haven raised the same point in related litigation concerning compensation for property taken by the noise and overflight of jet aircraft using the extended runway. Town of East Haven v. Eastern Airlines, 331 F.Supp. 16 (D.Conn.1971). Judge McLean not only doubted whether the regulation applied at all to the grant application; he squarely decided that the town had suffered no damage as a result of the omission of this information, "if omission there was." Id. at 36. More important, the alleged failure to follow federal regulations was not the basis of the state court injunction which is the subject of the present action. Whatever rights East Haven may have or have had [11] under federal law (and even assuming Judge McLean's decision does not collaterally estop the town from raising the same issue here), those rights were not enforced, or even

8. 49 U.S.C. § 1108(e) provided:
   "Project applications shall be matters of public record in the office of the Administrator. Any public agency, person, association, firm, or corporation having a substantial interest in the disposition of any application by the Administrator may file with the Administrator a memorandum in support of or in opposition to such application; and any such agency, person, association, firm, or corporation shall be accorded, upon request, a public hearing with respect to the location of any airport the development of which is proposed. The Administrator is authorized to prescribe regulations governing such public hearings, and such regulations may prescribe a reasonable time within which requests for public hearings shall be made and such other reasonable requirements as may be necessary to avoid undue delay in disposing of project applications."
   It does not appear from the record whether East Haven ever attempted to utilize this administrative procedure to make known its objections to the runway extension. The statute was replaced in 1970 by the present 49 U.S.C. § 1716(d).

9. 14 C.F.R. § 151.26(b) provides:
   "(b) Each sponsor must submit with his application—(1) A written statement—(i) Specifying what consideration has been given to the interest of all communities in or near which the project is located; and (ii) Containing the substance of any objection to, or approval of, the proposed project made known to the sponsor by any local individual, group or community . . . . . ."

10. East Haven also argues that the city was guilty of an identical failure to disclose in its 1969 grant application. However, for the reason indicated in footnote 1, supra, circumstances surrounding that application are irrelevant to the present case.

11. In an earlier phase of this litigation, Town of East Haven v. Eastern Airlines, 282 F. Supp. 507 (D.Conn.1968), Judge Timbers refused to issue a writ of mandamus directing the administrator to order the city and the airlines using its airport to cease jet flights. He found the evidence unclear as to whether the town had used the administrative remedy of 49 U.S.C. § 1482(a), which permits any person to file a complaint with the administrator for any violation of the federal aviation laws. The statute also permits the administrator to dismiss the complaint without a public hearing if he considers it to be without merit, but it was similarly unclear whether he had even considered any complaint that had been filed. Judge Timbers noted that the town did not allege that it had filed a complaint, nor did it seek mandamus to compel administrative consideration. Id. at 512.

   In view of the fact that none of the alleged failures of compliance with federal law, see also footnote 7 supra, were the basis of the state court injunction, it is unnecessary to decide whether Judge Timbers' decision dismissing the action against the administrator, id. at 512, bars the town from raising these claims here. Similarly, I need not decide whether failure to exhaust administrative remedies or the doctrine of laches would prevent it from being heard on these issues now, nearly six years since the runway was extended.

considered, by the Connecticut courts. Therefore, all the town's arguments on this subject are irrelevant to the instant case which, to repeat, concerns the power of a state court to enjoin activity Congress has reserved for exclusive federal regulation.

I find that with respect to all of the issues in the present posture of the case there remains no genuine issue of material fact. See Fed.R.Civ.P. 56(c). For all the reasons stated, the United States is entitled to summary judgment making permanent the preliminary injunction granted on June 25, 1971.

So ordered.