JOSEPH CHALEN, APPELLANT, V. ANGELA CIALINO,
APPELLEE.

291 N. W. 2d 256

·Filed April 23, 1980.  No. 42581.

Milo Alexander, for appellant.

Joseph P. Inserra and John P. Inserra, for appellee.

Heard before KRIVOSHA, C. J., BRODKEY, and WHITE, JJ., and RONIN and GARDEN, District Judges.

GARDEN, District Judge.

This is an action in equity wherein the plaintiff-appellant, Joseph Chalen, seeks to establish an easement for right-of-way across certain real estate owned by the defendant-appellee, Angela Cialino, under either or both of two legal theories: (1) easement by implication, and (2) easement by prescription. The defendant answered by denying plaintiff's right to an easement and by pleading permissive use as an affirmative defense. After trial, the District Court for Douglas County, Nebraska, found for the defendant and dismissed plaintiff's amended peti-petition at plaintiff's cost. We affirm the judgment of the trial court.

Equity actions are heard de novo by this court and we are required to reach an independent conclusion as to fact questions without reference to the conclusions of the District Court.

The essential facts in this case are these: Plaintiff and defendant are brother and sister. They live next door to one another at 5027 and 5033 South 23rd Street, respectively, in Omaha, Nebraska. Plaintiff's property is immediately to the north of defendant's. Both properties face South 23rd Street.

Plaintiff has lived at 5027 South 23rd Street since his family moved into the house in 1920. Defendant lived there with plaintiff and their parents until 1932 when she married and moved into the house at 5033 South 23rd Street.

Both properties were originally acquired in a single purchase by the parties' father, Vito Cialino, on April 19, 1919. The house at 5027 South 23rd Street was in its present location in the northwest corner of Lot 9 at that time. The house occupied by the defendant at 5033 South 23rd Street was moved into its present location some time in 1923.

The original purchase by Vito Cialino consisted of the south 2 feet of Lot 10 and all of Lots 9 and 8, Block 20, First Addition to South Omaha, Douglas

County, Nebraska. The subsequent chain of title is as follows: (1) Vito Cialino died on July 8, 1930, and the entire property passed to his widow, Vincenza Cialino. (2) On September 7, 1949, Mrs. Cialino executed two warranty deeds, each subject to a life estate in herself, which divided the property between plaintiff and defendant. Plaintiff was given the south 2 feet of Lot 10, all of Lot 9, and the north 8 feet of Lot 8, Block 20, First Addition to South Omaha, Douglas County, Nebraska. Defendant received the south 42 feet of Lot 8 in the same block and addition under her married name of Angela Pirruccello. (3) By warranty deed dated December 26, 1950, defendant conveyed her remainder interest back to Mrs. Cialino. (4) Slightly over a year later, on September 1, 1952, Mrs. Cialino conveyed the south 42 feet of Lot 8 back to defendant under the name of Angela Cialino, subject to a life estate in herself. (5) On September 9, 1957, Vincenza Cialino died.

Some time in 1920, shortly after plaintiff and his parents moved into the house at 5027 South 23rd Street, plaintiff and his father installed the driveway which is the subject of this dispute. The driveway runs east from South 23rd Street along the southern border of Lot 8 for a distance of approximately 60.5 feet. The driveway then curves to the northeast across the rear of Lot 8 for approximately 58.8 feet to the property line which now divides 5027 and 5033 South 23rd Street. The driveway continues across the rear of Lot 9 to three frame garages located at the rear of 5027 South 23rd Street. Those garages were constructed by plaintiff and his father some time in 1925. The driveway was already in place when defendant's house was moved to its present location in 1923.

Except for a brief time in 1941, the driveway across defendant's property was in constant use from the time of its construction until October 24,

1977, when defendant put up a chain link fence along her northern boundary line. The driveway was used two or three times a week until some time in 1928, and daily thereafter. The driveway was used by plaintiff, members of his family, and tenants occupying space at 5027 South 23rd Street. The driveway was in use at the time of the various transfers which gave plaintiff and defendant their respective interests, at the time of Mrs. Cialino's death in 1957, and for roughly 20 years thereafter. This use was alleged in plaintiff's petition and admitted by defendant's answer and is not disputed.

Plaintiff improved and maintained the driveway over the years by covering it with gravel, banking it, and clearing away weeds and snow.

At the time Vincenza Cialino divided the property in 1949, there was an understanding between plaintiff and defendant that plaintiff was to use the original driveway until such time as a new driveway was constructed on his property.

Defendant repeatedly reminded plaintiff over the years that he was to put in a driveway over his own land. Defendant finally concluded that she would have to force plaintiff to stop using the driveway. She did so on October 24, 1977, by putting up a fence along the boundary line dividing the two properties.

Plaintiff's testimony on the issue of permission was in direct conflict with defendant's. Plaintiff testified that there was never any understanding that a new driveway was to be constructed on his property; that he never asked defendant's permission to use the driveway; that defendant first objected in January or February of 1977; and that plaintiff believed he would be able to use the driveway as long as he wished.

The court stated in *Ohme v. Thomas*, 134 Neb. 727, 728, 279 N.W. 480, 481 (1938):

"While the law requires this court, in deter-

mining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." [Citations Omitted.]

We find that the defendant has affirmatively proved by a preponderance of the evidence that plaintiff's use of the driveway in question was permissive until such time as defendant withdrew permission by putting up the fence along the boundary line dividing the two properties.

Since plaintiff's use of the driveway across defendant's property was permissive in nature, an easement by prescription could not arise.

This court, in discussing easements by prescription, stated in *Scoville v. Fisher,* 181 Neb. 496, 499, 149 N.W.2d 339, 342 (1967):

Plaintiff's use of the area in question was neither under a claim of right adverse to the defendants or their predecessors in title nor was it exclusive. We shall discuss first the requirement that the use be adverse. The law with relation to this element and with regard to the distinction between an adverse and permissive user is well set out in Stubblefield v. Osborn, 149 Neb. 566, 31 N.W.2d 547, wherein it is said: " 'An easement by prescription can be acquired only by an adverse user for ten years. Such use must be open, notorious, exclusive and adverse.' Onstott v. Airdale Ranch and Cattle Co., 129 Neb. 54, 260 N.W. 566. See, also, Omaha & R. V. Ry. Co. v. Rickards, 38 Neb. 847, 57 N.W. 739.

"The use and enjoyment which will give title by prescription to an easement or other

incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse, *under a claim of right,* continuous and uninterrupted, open and notorious, *exclusive,* with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. See 28 C.J.S., Easements, § 10, p. 645.

" 'A prescriptive right is not looked on with favor by the law, and it is essential that all of the elements of use and enjoyment, stated above, concur in order to create an easement by prescription.' 28 C. J. S., Easements, § 10, p. 645.

" 'A *permissive* use of the land of another, that is a use or license exercised in subordination to the other's claim and ownership, *is not adverse* and cannot give an easement by prescription no matter how long it may be continued, * * *.' 28 C.J.S., Easements, § 14, p. 655.

"To establish a prescriptive right to an easement, *it must have been exercised under a claim of right. A use by express or implied permission or license cannot ripen into an easement by prescription.* See Sachs v. Toquet, 121 Conn. 60, 183 A. 22, 103 A. L. R. 677."

(Emphasis supplied in *Scoville.*)

We now turn to plaintiff's contention that an easement exists by implication. The conveyance of September 7, 1949, to defendant from her mother was by warranty deed as was the conveyance back to defendant dated February 1, 1952. No reference was made in either deed to the retention by the grantor of any right to use the driveway. Therefore, if such

an easement exists, it must arise by a reservation by implication.

This court, in *Bennett v. Evans,* 161 Neb. 807, 822, 74 N.W.2d 728, 737 (1956), stated as follows:

> But here we are dealing with an implied reservation. Consistent with the above authorities, we adopt the rule applicable to implied reservations as stated in 1 Thompson, § 396, p. 645, which we again quote: "As a general rule, there is no implied reservation of an easement in case one sells a part of his land over which he had previously exercised a privilege in favor of the land he retains, unless the burden is apparent, continuous, and strictly necessary for the enjoyment of the land retained. A grantor, as we have seen, can not derogate from his own grant and as a general rule he can retain a right over a portion of his land conveyed absolutely only by express reservation."

The question in the instant case is: Has the plaintiff shown an implied reservation and, specifically, does the evidence show strict necessity?

Plaintiff's evidence fails to show that the driveway across defendant's property is necessary. The evidence shows conclusively that plaintiff has ample room along the south edge of his property to build his own driveway. The evidence further reflects that the cost to plaintiff will not be exorbitant nor will the placement of the driveway depreciate the value of his real estate. We, therefore, find that, because there is no showing of strict necessity, no easement arose through a reservation by implication.

The trial court was correct in its findings and in dismissing plaintiff's amended petition, and its action in doing so is affirmed.

AFFIRMED.