LARRY FIESE, DOING BUSINESS AS GOTHENBURG FLYING
SERVICE, APPELLANT, V. GEORGE SITORIUS, ALSO KNOWN AS
GEORGE R. SITORIUS, AND MARCIA E. SITORIUS, HUSBAND AND
WIFE, APPELLEES.

526 N.W.2d 86

Filed January 13, 1995.   No. S-93-630.

Steve Windrum for appellant.

P. Stephen Potter for appellees.

David T. Schroeder for amicus curiae Nebraska Aviation Trades Association.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

LANPHIER, J.

Plaintiff-appellant, Larry Fiese, who operates an airport, brought this action in the district court for Dawson County to enjoin defendants-appellees, George R. and Marcia E. Sitorius, who own land next to the airport, from placing any obstruction in airspace over Sitoriuses' land. Fiese claimed he has acquired an avigation easement by prescription to take off and land over Sitoriuses' farm. After a trial, the district court dismissed the

action with prejudice, concluding that an avigation easement by prescription has never been recognized in Nebraska. Fiese then filed a motion for new trial, which was denied. Fiese appeals from the judgment of the district court overruling his motion. We affirm the judgment of the district court because we conclude that under the circumstances of this case, Fiese could not obtain an avigation easement by prescription. To obtain an easement by prescription, use must be *adverse*, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement for the full prescriptive period. Federal law prohibits landowners from interfering with aircraft flying in the navigable airspace of the United States. Since Sitoriuses had no right to prohibit flights in the navigable airspace overlying their property, Fiese's use of the navigable airspace was not adverse for the purpose of obtaining an easement by prescription.

## BACKGROUND

Fiese alleged in his second amended petition that he and his predecessor in interest, his father, have operated a private airstrip on his property continuously since 1969. The grass airstrip, roughly 160 feet wide and 2,400 feet long, runs from the south to the northernmost edge of Fiese's property. At the northernmost edge of Fiese's property, where the airstrip ends, is a county road. Across the county road, to the north, lies Sitoriuses' farm and dwelling.

The evidence adduced at trial showed that Fiese's father commenced the operation of the airstrip in 1969. Fiese testified that his father typically took off toward and landed from the north, except when wind conditions required doing otherwise. In 1981, Fiese bought the airstrip and the agricultural spraying business from his father. Fiese testified that during the time his father owned the business, and continuously since 1981, there has never been a year during which they have not taken off and landed on the north end of the airstrip. Fiese testified that neither he nor his father ever received permission from Sitoriuses to fly over their land.

Fiese alleged that on August 6, 1992, Sitoriuses placed on

their own property a stack of hay, approximately 30 feet wide and 15 feet high, to prevent Fiese and others from safely using the airstrip. The hay was admittedly placed directly on the other side of the road, approximately 60 feet from the northern end of Fiese's airstrip. Fiese also alleged that Sitoriuses had previously erected a pole 20 to 25 feet tall directly across the road from the northern end of his airstrip.

On February 5, 1993, Fiese filed a lawsuit in which he sought an injunction to prevent Sitoriuses from placing any obstruction in the airspace overlying Sitoriuses' land. He claimed an avigation easement and contended that he and his predecessor in interest, his father, used the airspace overlying Sitoriuses' land since 1969. Fiese alleged that he and his father had used the airspace "openly, notoriously, adversely, continuously, and under claim of right and without interruption, all with the knowledge and acquiescence of Defendants and Defendants' predecessors in interest." After the trial, the suit was dismissed, and this appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Fiese asserts in summary that the trial court erred in dismissing his petition. This issue raises a question of law.

## STANDARD OF REVIEW

Regarding questions of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994).

## AVIGATION EASEMENT

The primary issue raised by this appeal is whether Nebraska law allows a private party to obtain by prescription an avigation easement. An avigation easement grants the holder of the easement the right to navigate aircraft in the designated airspace overlying another's land. *Johnson v. Airport Authority*, 173 Neb. 801, 115 N.W.2d 426 (1962). The Legislature has acknowledged the existence of avigation easements and the right of certain political subdivisions to acquire such easements through eminent domain. See Neb. Rev. Stat. § 3-204 (Reissue 1991). This court has ruled that the condemnation of an

avigation easement is a taking, as that term is defined within the context of Fifth Amendment jurisprudence. *Johnson v. Airport Authority, supra.* However, we have never ruled on whether a private party may obtain an avigation easement by prescription.

There is no clear trend among the jurisdictions which have considered the issue. Though no court has apparently ever upheld an avigation easement, some have determined that an avigation easement may be acquired by prescription under the right circumstances. *Petersen v. Port of Seattle*, 94 Wash. 2d 479, 618 P.2d 67 (1980); *Drennen v. County of Ventura*, 38 Cal. App. 3d 84, 112 Cal. Rptr. 907 (1974); *Shipp v. Louisville and Jefferson County Air Board*, 431 S.W.2d 867 (Ky. 1968), *cert. denied* 393 U.S. 1088, 89 S. Ct. 880, 21 L. Ed. 2d 782 (1969). In other jurisdictions, courts have held that an avigation easement may not be acquired by prescription. *Sticklen v. Kittle*, 168 W. Va. 147, 287 S.E.2d 148 (1981); *Hinman v. Pacific Air Transport*, 84 F.2d 755 (9th Cir. 1936), *cert. denied* 300 U.S. 654, 57 S. Ct. 431, 81 L. Ed. 865 (1937).

The issue has been addressed most recently by the Supreme Court of Connecticut. In *County of Westchester, N.Y. v. Town of Greenwich*, 227 Conn. 495, 629 A.2d 1084 (1993), the plaintiff, Westchester County, owned and operated an airport. The defendants owned land beneath the air approach zone for one of the airport's runways. Trees on the defendants' land had grown into the air approach zone. Their growth reduced the buffer of airspace around the airport referred to as a "clear zone." Due to the reduction in the clear zone, the Federal Aviation Administration reduced the usable length of the airport's runway. Consequently, the plaintiff asserted that it had acquired, by prescription, an avigation easement. Additionally, the plaintiff sought an injunction authorizing it to top or cut down, as necessary, the defendants' trees which had penetrated into the clear zone.

The Connecticut Supreme Court refused to decide generally whether an avigation easement may be acquired by prescription. Relying on federal law, 49 U.S.C. app. §§ 1301(29) and 1304 (1988), the Connecticut Supreme Court concluded that the defendants had no right to stop the plaintiff's overflights. In relevant part, § 1304 provides that "[t]here is recognized and

declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." " 'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft." § 1301(29). The Connecticut Supreme Court determined that since the defendants could not prevent the overflights, the plaintiff's use of the airspace could not be considered adverse. It therefore held that the use could not ripen into a prescriptive easement.

In this, we are controlled by the advancing juggernaut of seemingly ubiquitous preemptive federal legislation.

> "It would be difficult to visualize a more comprehensive scheme of combined regulation, subsidization and operational participation than that which the Congress has provided in the field of aviation." American Airlines, Inc. v. Town of Hempstead, 272 F.Supp. 226, 232 (E.D.N.Y. 1967), aff'd, 398 F.2d 369 (2d Cir. 1968), cert. denied, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 561 (1969). In particular with respect to the regulation of "navigable airspace," Congress has legislated so pervasively that state provisions inhibiting that regulation, whether in the form of legislation or judicial decision, must be declared invalid under the supremacy clause.

United States v. City of New Haven, 367 F. Supp. 1338, 1340 (D. Conn. 1973), aff'd 496 F.2d 452 (2d Cir. 1974), cert denied 419 U.S. 958, 95 S. Ct. 218, 42 L. Ed. 2d 174 (1974).

When Congress legislated "navigable airspace," it was apparently not done with a "soft hand" with due regard in mind for the rights of those owning property adjoining or near airports. Relevant federal law dictates the answer as to whether the private airstrip which is the subject of this litigation can obtain an easement of prescription over adjoining land. Sections 1301(29) and 1304 of the United States Code prohibit landowners from obtaining injunctive relief against aircraft using the navigable airspace of the United States. See United States v. City of New Haven, supra; Town of East Haven v. Eastern Airlines, Inc., 331 F. Supp. 16 (D. Conn. 1971), aff'd 470 F.2d 148 (2d Cir. 1972), cert. denied 411 U.S. 965, 93 S.

Ct. 2144, 36 L. Ed. 2d 685 (1973). Therefore, Sitoriuses could not enjoin Fiese from using the airspace above Sitoriuses' property to safely take off and land. Fiese had a right to use the airspace overlying Sitoriuses' land to safely take off and land. The right was not granted by Sitoriuses, but by the U.S. government. The statutory right of freedom of transit through the navigable airspace of the United States is, in effect, a license. See *County of Westchester, N.Y. v. Town of Greenwich, supra.* See, also, *Antonik v. Chamberlain*, 81 Ohio App. 465, 78 N.E.2d 752 (1947) (license granted to private party pursuant to federal law). Fiese's use of the airspace, therefore, was not adverse, but permissive. See *Drennen v. County of Ventura*, 38 Cal. App. 3d 84, 112 Cal. Rptr. 907 (1974) (no prescriptive easement where overflights did not interfere with owner's actual use and enjoyment of land); *City of Statesville v. Credit and Loan Co.*, 58 N.C. App. 727, 294 S.E.2d 405 (1982) (flights over land of another were not adverse for purpose of obtaining prescriptive easement where state law prohibited owner from preventing overflight).

A permissive use of the land of another is not adverse and cannot give an easement by prescription no matter how long it may be continued. *Chalen v. Cialino*, 206 Neb. 106, 291 N.W.2d 256 (1980). The use and enjoyment which will create an easement by prescription must be *adverse*, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement for the full prescriptive period. *Id.* Since Fiese's use of the airspace necessary to safely take off and land was permissive, pursuant to a license from the U.S. government, it could not ripen into an easement by prescription. Fiese has no easement.

Fiese also seeks an injunction, and since this is a suit in equity, we must determine whether Fiese has any other legal basis entitling him to enjoin Sitoriuses from placing obstructions on their own land. An injunction will not lie unless the right is clear, the damage is irreparable, and the remedy at law is inadequate. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994). Although Congress has granted Fiese a right of freedom of transit through the navigable

airspace of the United States pursuant to 49 U.S.C. § 1304, Congress has not provided an attendant remedy for protection of that right. The section of the Federal Aviation Act recognizing a public right of freedom of transit through navigable airspace of the United States, 49 U.S.C. § 1304, does not create a private right of action in favor of airport owners. *County of Westchester v. Town of Greenwich, Conn.*, 745 F. Supp. 951 (S.D.N.Y. 1990). Hence, Fiese cannot base his request for an injunction on the provision of federal law granting him the right of freedom of transit through navigable airspace. The Federal Aviation Act merely permits the filing of a complaint with the Secretary of Transportation or the Civil Aeronautics Board for acts or omissions in contravention of the provisions of the act. 49 U.S.C. app. § 1482(a) (1988). As explained above, since the federal government has comprehensively occupied the field of navigable airspace regulation, our determination is controlled by federal law. See *United States v. City of New Haven*, 367 F. Supp. 1338 (D. Conn. 1973).

## CONCLUSION

In light of the foregoing, the judgment of the district court dismissing the action was proper and is, therefore, affirmed.

AFFIRMED.