In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2545

Charles M. Vorhees, as Executor of the
Last Will and Testament of Helen Brach, a person
presumed dead,

Plaintiff-Appellant,

v.

Naper Aero Club, Inc., an Illinois Not-for-
Profit Corp.; Naperville Flying Club, Inc.,
an Illinois Not-for-Profit Corp.;
Business Men's Flying Club, Inc., an
Illinois Not-for-Profit Corp., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 6118--James H. Alesia, Judge.

Argued March 1, 2001--Decided November 9, 2001

   Before Harlington Wood, Jr., Manion, and
Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Plaintiff
Charles M. Vorhees is the executor of the
estate of Helen Brach. The Brach estate
owns an undivided, one-half interest in a
312-acre farm (the Farm) located in
unincorporated DuPage County, Illinois,
adjacent to the cities of Naperville and
Aurora. Defendant Naper Aero Club, Inc.
(Naper Aero) is a not-for-profit flying
club that operates a small private
airport (the Airport), adjacent to the
southern boundary of the Farm. The other
five corporate defendants are flying
clubs whose members operate aircraft from
the Airport; the 52 individual defendants
are either owners of the Airport or
private pilots alleged to have used the
Airport.

   Naper Aero maintains two runways at the
Airport for takeoffs and landings. One of
those runways runs north and south; the
north end of the runway abuts the
southern boundary of the Farm. As a
result of the proximity of the runway to
the Farm, aircraft taking off from or

landing at this runway necessarily travel across the Farm at very low altitudes.

A predecessor to Naper Aero established the Airport some time around 1956. In the early years, it appears that the Farm and the Airport coexisted harmoniously. The Farm had been used mostly for farming purposes and had remained unimproved. The incoming and outgoing flights did not hinder any of the Farm's activities.

By the late 1980s, things had changed. The cities of Aurora and Naperville were experiencing explosive growth, and the Farm was advantageously situated for commercial use. Vorhees realized that any plans to build high-rise buildings on the Farm, especially near its southern border, would be either impossible or unattractive because of the constant low flights. Wishing to obtain the highest and best use for his property, Vorhees formally demanded that the defendants cease from entering the airspace over the Farm. They refused; two lawsuits resulted.

In 1995, Vorhees brought a suit against the Secretary of the Illinois Department of Transportation, the Director of the Division of Aeronautics of the Department of Transportation, the City of Naperville, the City of Aurora, the County of DuPage, and the Naper Aero Club. He based this suit on a 1990 amendment to the Illinois Aeronautics Act that states: "No person may create or construct any airport hazard which obstructs a restricted landing area or residential airport . . . ." 620 ILCS 5/49.1 (West 2001). Vorhees believed that this amendment amounted to a taking of property adjacent to airports; in his case, he argued he was forced to give an implicit air easement, which would limit or eliminate his ability to develop the Farm or sell it for commercial purposes. As a remedy, he asked the courtpermanently to enjoin the defendants from enforcing the amendment against him and to issue a declaratory judgment stating that the amendment indeed effectuated a taking of private property for which just compensation was due. The district court dismissed the case, ruling that because Vorhees had failed to show that the amendment was preventing him from executing existing plans to develop the land, there was no "actual case or

controversy" and the court therefore lacked subject matter jurisdiction. Vorhees v. Brown, 95 CV 3812, 1996 WL 139393 (N.D. Ill. Mar. 26, 1996) (dismissing claim against city of Naperville); 1996 WL 568775 (N.D. Ill. Sept. 27, 1996) (dismissing claims against remaining defendants). In an unpublished opinion, this court affirmed and encouraged Vorhees to attempt development and to commence inverse condemnation proceedings instead. Vorhees v. Brown, 134 F.3d 375, 1998 WL 54657 (7th Cir. Feb. 4, 1998).

Rather than heeding our advice (which he was under no obligation to do), Vorhees filed a second suit in the Chancery Division of the Circuit Court of DuPage County, on August 19, 1999, seeking again permanently to enjoin the defendants from using the north/south runway at the Airport. Vorhees claimed that the injunction was necessary in order for him to obtain full enjoyment of his property and that the pilots' entrance into the airspace above the Farm was a trespass.

Certain defendants immediately filed a motion to remove the case to the federal court for the Northern District of Illinois pursuant to 28 U.S.C. sec. 1441. (The other defendants apparently acquiesced. We note that the removal statute requires all defendants to join in a motion for removal, but in light of our disposition of this appeal, we do not pursue this point further.) The defendants contended that because Vorhees sought to prohibit the use of the runway at the Airport, and because regulation and operation of airports are matters exclusively within the purview of the federal government, federal law preempted state law with respect to all aspects of the complaint. This amounted to the inaptly named "complete" federal preemption, they believed, and they thus relied on original federal question jurisdiction under 28 U.S.C. sec. 1331 to support their removal petition.

With the case now in federal court as a result of the removal petition, Vorhees filed a motion on October 6, 1999, to remand the case to the Circuit Court of DuPage County pursuant to 28 U.S.C. sec. 1447(c). He took the position that there was no jurisdiction in the federal court, either under sec. 1331 or under sec.

1332. The latter is undisputed; parties on both sides of this case are citizens of Illinois. With respect to sec. 1331, Vorhees argued that Congress, in enacting the Federal Aviation Act, did not intend to occupy the field of aviation so thoroughly as to preclude the application of state trespass laws. While that motion was pending, the defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the district court had no authority to issue an injunction, since under Federal Aviation Regulations, only the Federal Aviation Administration (FAA) has the authority to limit airflight in navigable airspace.

On May 16, 2000, the district court denied Vorhees's motion to remand and granted the defendants' motion to dismiss the complaint. Vorhees now appeals from both the court's denial of his motion to remand and from the dismissal of the complaint. We review these decisions de novo, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. See Tylka v. Gerber Prods. Co., 211 F.3d 445, 447 (7th Cir. 2000); Jones v. Simek, 193 F.3d 485, 489 (7th Cir. 1999).

I

Under 28 U.S.C. sec. 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." As we have already noted, the parties to this lawsuit are not diverse; hence, the original jurisdiction necessary for removal, if such jurisdiction exists, must be based on the presence of a federal question. The defendants were able to convince the district court to accept jurisdiction over the case on this basis, contending that the case arose "under the Constitution, laws, or treaties of the United States." 28 U.S.C. sec. 1331.

A case arises under federal law within the meaning of sec. 1331 only when the claim for relief depends in some way on federal law, "unaided by anything alleged

in anticipation or avoidance of defenses which it is thought the defendant may interpose." Taylor v. Anderson, 234 U.S. 74, 75-76 (1914). This is the "well-pleaded complaint" rule that every first-year law student learns was established in Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908). Under that rule, federal courts may look only to the well-pleaded complaint, and not to any possible or anticipated defenses, to determine if the case arises under federal law. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). The complaint Vorhees filed did not invoke any federal law as the basis for his action, nor does his complaint raise any federal issues--at least not consciously or intentionally. It raised only state law claims for trespass and injunctive relief.

Nonetheless, even though plaintiffs are normally the masters of their own cases and can choose which claims they wish to present, there are limits to this discretion. One of those limits arises when federal law has entirely displaced state law. Federal question jurisdiction will be present even if the complaint does not invoke it when "federal law so occupies the field that it is impossible even to frame a claim under state law." Ceres Terminals, Inc. v. Indus. Comm'n of Ill., 53 F.3d 183, 185 (7th Cir. 1995). In such a case, courts sometimes refer critically to the complaint as one that has been "artfully pleaded" to evade the federal claim, see Lehmann v. Brown, 230 F.3d 916, 919 (7th Cir. 2000), although the pleader's intent is not relevant to the jurisdictional issue. Removal to federal court on the basis of federal question jurisdiction, even if the state court would not have had concurrent jurisdiction, is one option available to the defendants. See Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1075 (7th Cir. 1992); 28 U.S.C. sec. 1441(e). These are the cases in which the term "complete preemption" has been used, although we have had occasion to note elsewhere that this is a misnomer. See Lehmann v. Brown, 230 F.3d at 919 (noting that "complete preemption" has nothing to do with preemption and everything to do with federal occupation of a field).

The defendants argue, and the district

court concluded, that section 40103 of the Federal Aviation Act has exactly this effect of "complete preemption" or displacement of all state law in the field. They point to the fact that 49 U.S.C. sec. 40103(a) provides that "[t]he United States Government has exclusive sovereignty of airspace of the United States." The injunction the plaintiff seeks would, at first blush, probably require the defendants to change their routes and flight patterns. (Such a change might not be necessary if the defendants were essentially forced to purchase an easement, but we put this possibility aside for now.) The change in route and flight patterns would ultimately result in the regulation of airspace, in contravention of the rule that this regulation is solely within the sovereignty of the federal government. Because the requested state law recovery would interfere with federal authority, the defendants argue, the claim must be completely preempted.

While these arguments set forth a strong case for federal preemption, they do not answer the more subtle question of whether we are dealing with so-called "complete preemption" or its more ordinary cousin, "conflict preemption." Only "complete" preemption affects federal subject matter jurisdiction. "Conflict" preemption relates to the merits of a claim. It comes into play any time a state law allegedly conflicts with federal law. If such a conflict exists, then the state law is preempted and must necessarily give way to federal law. See English v. General Elec. Co., 496 U.S. 72, 79 (1990). For present purposes, however, the key point is this: ordinary or conflict preemption is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction. See Metropolitan Life, 481 U.S. at 63; Lehmann, 230 F.3d at 919-20. This is true even if all parties anticipate the defense or admit that the federal defense is the only question truly at issue. Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).

We agree with the defendants that the Illinois law claims Vorhees is trying to assert may very well be preempted by the Federal Aviation Act (though we make no

ruling on that question at this time). But the fact that a federal statute creates a defense to a state law claim does not necessarily mean that "Congress has, by statute, taken the subject away from state tribunals and given it to federal courts." Ceres, 53 F.3d at 186. The question is whether, in enacting the Federal Aviation Act, Congress clearly intended completely to replace state law with federal law and create a federal forum, or, more likely, if it only intended to provide a federal defense to the application of state law. See Graf v. Elgin, Joliet & Eastern Ry. Co., 790 F.2d 1341, 1344 (7th Cir. 1986). In this case, we conclude that it is the latter.

There are only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction: the first is in the field of federal labor law and the second is in the area of federal pension law. In the area of federal labor law, the Court has held that sec. 301 of the Labor Management and Relations Act (LMRA) completely preempts state law claims based on violations of contracts between an employer and a labor organization if those claims require interpretation of the collective bargaining agreement. See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557 (1968). In the field of federal pension law, the Employee Retirement Income Security Act (ERISA) completely preempts state law claims brought to enforce pension or welfare benefits. See Metropolitan Life, 481 U.S. 58 (1987).

In both of these fields, a state court claim is not necessary because the federal claim includes the same ingredients as the state claim and provides some recovery. Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. sec. 185(a). Section 502(a)(3) of ERISA provides that a civil action may be brought "by a participant,

beneficiary, or fiduciary" to enjoin any action which violates ERISA or the terms of an ERISA plan, to enforce any provision of ERISA, or to recover benefits due under the terms of a plan. 29 U.S.C. sec. 1132(a)(3). In contrast, the Federal Aviation Act has no civil enforcement provision or any provision allowing a private resident to sue for the property torts of an airline pilot or airport operator. This is seemingly fatal to a claim of complete preemption. See Lehmann, 230 F.3d at 919; Rice v. Panchal, 65 F.3d 637, 641 (7th Cir. 1995) ("[T]he ability to bring suit under [federal law] is an element of 'compete preemption'. . . . For unless the federal law has created a federal remedy--no matter how limited--the federal law, of necessity, will only arise as a defense to a state law action.").

   Following the logic of the ERISA and sec. 301 cases, this circuit has added the regulation of mobile telecommunications rates and market entry to the areas in which federal law totally occupies the field, even though the relevant laws do not include a civil enforcement provision permitting an original right of action. In Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983 (7th Cir. 2000), we found that the Federal Communications Act completely preempted state regulation of mobile telecommunications rates and market entry and allowed removal of claims that purported to invoke state law in this area. Congress's intent to keep states out of the picture was clear: the relevant statute stated that "no State or local government shall have any authority to impose any rate or entry regulation upon any private land mobile service." 47 U.S.C. sec. 332(c)(3) (emphasis added); Bastien, 205 F.3d at 987. There is no such broad language in the Federal Aviation Act specifically prohibiting state and local governments from regulating airflight in any way whatsoever. True, the United States does have "complete and exclusive national sovereignty in the air space"; but this does not completely extinguish all rights based on state law. See United States v. Causby, 328 U.S. 256 (1946) (recognizing a Fifth Amendment takings claim in connection with overflights of U.S. military aircraft that affected plaintiff's property). This case, it is

worth recalling, is about an alleged trespass into the airspace over Vorhees's property. If the federal presence were as total as the defendants claim, then Vorhees would have no state trespass claim even if Naper Aero claimed a right to enter Vorhees's property and build guidelights there to assist landing aircraft. We have not gone that far in the past; to the contrary, we have held that some state law claims relating to airflight may still have merit, notwithstanding the broad scope of the Federal Aviation Act. See Bieneman v. City of Chicago, 864 F.2d 463, 473 (7th Cir. 1988) (federal law does not preempt all common-law remedies for airport noise and pollution: "the state may employ damages remedies [ ] to enforce federal requirements . . . or to regulate aspects of airport operation over which the state has discretionary authority."). See also Causby, 328 U.S. at 266 ("[w]hile the meaning of property as used in the Fifth Amendment [is] a federal question, it will normally obtain its content by reference to local law.") (internal quotations omitted).

Finally, we note that several of the cases relied upon by the United States government, as amicus curiae, to show that the complaint was properly dismissed as preempted by the Federal Aviation Act were decided in state courts, not federal courts. See City of Austin v. Travis County Landfill Co., 25 S.W.3d 191, 206 (Ct. App. Tex. 1999) (state law injunction against government airflight over private property was preempted by the Federal Aviation Act); Fiese v. Sitorius, 526 N.W.2d 86, 90 (Neb. 1995) (airport owner's requested injunction against neighbor obstructing airflight was preempted by Federal Aviation Act); Krueger v. Mitchell, 332 N.W.2d 733, 740 (Wis. 1983) (injunctive relief in aviation nuisance action was preempted by Federal Aviation Act). From all that appears, these state courts were merely evaluating the merits of an ordinary conflict preemption defense and ruling accordingly, as they are clearly competent to do.

II

In light of these principles, we hold that the district court should have remanded this case to state court for

want of jurisdiction. Given this finding, we need not address the merits of the defendants' motion to dismiss. And of course, upon remand to state court, that court will be free to consider the question whether the Federal Aviation Act preempts the claim Vorhees is attempting to present here--a claim on which our jurisdictional ruling rejecting "complete preemption" or occupation of the field has no bearing. See Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989). At the same time, however, we encourage the plaintiff to think long and hard before pursuing the case in state court. Most issues of airflight and navigable airspace, probably including take-offs and landings, are within the sovereign regulatory powers of the federal government. We predict that it would be difficult at best to convince a state court that the claim about trespass to airspace Vorhees is trying to present would not interfere with the federal regulatory apparatus. "These subjects are governed by federal law, and a state may not use common law procedures to question federal decisions or extract money from those who abide by them." Bieneman, 864 F.2d at 473. To the extent federal law itself has effectuated a taking of Vorhees's property, he is of course also free to approach the FAA with his concerns or to pursue a takings claim in the proper federal court (probably the Court of Federal Claims, given the likely amount in controversy), if he can otherwise satisfy the prerequisites for such a suit.

The judgment of the district court is Vacated and the case is Remanded for purposes of a remand to the state court under 28 U.S.C. sec. 1447(c). Each party shall bear its own costs on this appeal.

Harlington WOOD, JR., Circuit Judge, dissenting. In my view this interesting case is not as involved as it first may appear. Plaintiff filed his complaint in the circuit court of DuPage County, Illinois, in Chancery, seeking only aninjunction prohibiting defendants from taking off or landing on their runway in question or permitting others to do so. One end of that runway ends about twenty feet from one line of plaintiff's

property, and depending on weather conditions it would be used for takeoffs or landings, both unavoidably resulting in low-level flights across plaintiff's property. Takeoffs and landings are generally regarded as critical times in aircraft operations.

It is obvious that any such injunction would regulate flight in the air above plaintiff's property, which is what he seeks to do by prohibiting it. My disagreement with the majority is that I believe that the regulation of air flight is totally preempted by the federal government. See 49 U.S.C. sec. 40103(a)(1) ("The United States Government has exclusive sovereignty of airspace of the United States."). The majority points out that this preemption has not been made as clearly as in other matters of federal preemption, federal labor law and federal pension law, both important areas of federal preemption. It is true that the federal government's exclusive control of navigable airspace may not be as explicit as it might have been, but I submit that Congress thought no more needed to be said than already had been said. I believe this case is similar to Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 986-87 (7th Cir. 2000).

As the United States succinctly points out in its amicus brief supporting the district court's dismissal of plaintiff's case:

Pursuant to its Commerce Clause power, Congress has preempted state regulation of navigable airspace. Since 1926, federal law has asserted for the United States "complete and exclusive national sovereignty in the air space" over this country. United States v. Causby, 328 U.S. 256, 250 [sic] (1946), citing the Air Commerce Act of 1926, Pub. L. No. 69-254, 44 Stat. 568 (1926), as amended by the Civil Aeronautics Act of 1938, Pub. L. No. 75-706, 52 Stat. 973 (1938). In 1958, Congress reenacted this provision as part of the Federal Aviation Act of 1958, 72 Stat. 731, Pub. L. No. 85-726. See 49 U.S.C. sec. 1508(a) (1993). In 1994, Congress recodified and altered the phrasing of the preemption provision. The provision now states: "The United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C.

sec. 40103(a).

Federal law defines "navigable airspace" to include "airspace needed to ensure safety in the takeoff and landing of aircraft." 49 U.S.C. sec. 40102(a)(30). Were flight not completely preempted but left to all the state courts across this country, air transportation could only be chaotic and dangerous. Runway use cannot be viewed separately. Runways cannot be used for takeoffs and landings without affecting flight patterns. Using the runway in question only as a taxi way to another runway is not at issue here. Courts in Texas, Nebraska, and Connecticut have held that states may not regulate airspace. See City of Austin v. Travis County Landfill Co., 25 S.W.3d 191, 206 (Tex. App. 1999); Fiese v. Sitorius, 526 N.W.2d 86, 90 (Neb. 1995); United States v. City of New Haven, 367 F. Supp. 1338 (D. Conn. 1973). Our court has already had a say about the problem in Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974). As the panel in Kohr noted, early in the jurisprudence of this country, the control of navigable water was moved from state to federal control. Id. at 403-04 (quoting Northwest Airlines, Inc. v. State of Minnesota, 322 U.S. 292, 303 (1944) (Jackson, J., concurring)). As was stated in Kohr, quoting Northwest Airlines,

Air as an element in which to navigate is even more inevitably federalized by the commerce clause than is navigable water. Local exactions and barriers to free transit in the air would neutralize its indifference to space and its conquest of time.

Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and order. Its privileges, rights, and protection, so far as transit is concerned, it owes to

the Federal Government alone and not to any state government.

Id. at 404 (quoting Northwest Airlines, Inc., 322 U.S. at 303 (Jackson, J., concurring))./1

I believe complete preemption exists and as a result the removal was proper. The district court properly denied plaintiff's motion to remand to the state court. Moving on to the merits, I would affirm the district court's dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted. Plaintiff seeks only an injunction which would regulate air traffic, not money damages.

If plaintiff has state remedies not involving preempted flight airspace management, which he does not seek in this complaint, I would leave any further causes of action plaintiff may pursue entirely to the judgment of his own lawyers.

I must respectfully DISSENT.

FOOTNOTE

/1 In some smaller airports where there may not be an operating control tower, there are applicable federal rules and procedures for all pilots to follow. The Aircraft Owners and Pilots Association ("AOPA"), Washington, D.C., publishes a very useful Handbook for private pilots which contains the federal aviation regulations and other helpful information concerning departing from or landing at airports without an operating control tower. Furthermore, contrary to the issuance of a driver's license by a state, federal aviation regulations provide that no person in the United States may pilot a plane unless that person has in his possession a current pilot certificate (commonly referred to as a pilot's license) issued to that person pursuant to federal aviation regulations. No state can issue pilot certificates.